I. INTRODUCTION A.
This negligence case involves primarily the issue of whether the trial judge abused his discretion in denying a motion to set aside a default judgment. This Court affirms — with the exception of the damages award of $180,000. The award is vacated and the issue remanded because the record is devoid of evidentiary support.
 B.
On October 16, 1984, an individual burglarized a boarding house[1] in Jackson and violently attacked one of the elderly residents, *Page 611 
Bobbie Nevels. On July 16, 1987, Nevels filed a complaint in the Hinds County Circuit Court against the owner of the house, Wilma Rich, for her alleged negligence in failing "to provide appropriate and necessary security to assure the reasonable protection of the . . . residents." Nevels claimed that she sustained "grievous physical injuries, pain and emotional distress, all of which required and continues to require medical and psychiatric care." Nevels "demanded" $250,000 in actual damages and $250,000 in punitive damages.
Rich subsequently received a summons from Nevels on July 27, 1987; however, she wholly failed to respond. Thus, on December 9, 1987, Nevels moved for and secured an entry of default. Six months later, on June 6, 1988, Nevels filed a motion for default judgment. On August 12, 1988, Judge Charles Barber held a hearing, granted the motion, and awarded Nevels $180,000. Judge Barber entered the final judgment on August 15.
On June 20, 1989, Nevels filed a "Motion for Examination of Judgment Debtor"; the next day, Judge Barber granted the motion. Finally, on July 14, 1989 — over two years after Nevels filedher complaint and nearly one year after Barber granted the motionfor a default judgment — Rich responded. Actually, Betty L. Brown and Jean Jennings filed a motion on Rich's behalf asking that the service of process be quashed or that the default judgment be set aside. (Brown and Jennings are relatives of Rich and were appointed her conservators only two days prior to their filing of the motion.)
Specifically, the conservators contended that the summons contained a misnomer — i.e., it incorrectly identified Wilma Rich as "Wilma Ritchie." The conservators nonetheless conceded that the sheriff "in fact served" Rich. The conservators added that, although Rich was served, she "was thoroughly incompetent to have any meaningful understanding of the process that had been served upon her."
Alternatively, the conservators contended that "reasonable and valid grounds" exist for "setting aside the default judgment." They based this contention on Rich's "medical condition, age, thorough ignorance of the summons, and thorough ignorance to notify other family members of [the] summons served upon her." And they explained that a "defense to the merits of [Nevels'] claim" exists and that "no prejudice [would] be suffered by [Nevels] if the default judgment is set aside."
The trial judge held a hearing and denied the conservators' request. (The judge also ordered that all instances of "Wilma Ritchie" found in the dockets and minutes of the court be amended to reflect her correct name, "Wilma Rich.")
The conservators appealed and presented two issues:
(1) Whether the service of process should have been quashed anddefault judgment set aside because Nevels incorrectly identifiedRich on the summons as "Ritchie?"
(2) Whether the default judgment should have been set aside?
 II. ANALYSIS A. Whether Service of Process Should Have Been Quashed? 1. The Parties' Contentions
The conservators' one-page argument regarding this issue is simple. They contend that Rich has no recollection of being served; therefore, she may have been misled by the misnomer.
Nevels counters that, indisputably, Rich received a summons and that her alleged lack of "recollection" due to alleged incompetency is unproven. Nevels adds that case law is supportive of the trial judge's refusal to quash the service of process and his order to amend all instances of "Wilma Ritchie."
 2. Dispositive Law Southern Trucking Serv., Inc. v. Mississippi Sand Gravel,Inc., 483 So.2d 321 (Miss. 1986) is dispositive of the issue. InSouthern Trucking, the issue was one of first impression, so this Court considered the various views espoused by other jurisdictions. *Page 612 
In sum, this Court decided to reject the admittedly harsh minority view which holds that a misnomer should mean the death-knell of a case. Id. at 323 (citing case law from other jurisdictions). This Court instead adopted the "general view" which holds that a misnomer is not fatal so long as the incorrectly-identified party knew what was meant. Id. (citingBank of America v. Superior Court for Los Angeles County,35 Cal.App.3d 555, 110 Cal.Rptr. 709, 710 (1973) (bank "knew at all times the case it had to meet" despite the misnomer). Thus, "an amendment correcting a misnomer is permissible at any time or any stage in the proceedings." Id. at 324 (citing 67A C.J.S.Parties § 172); see also Donald v. Luckie Strike Loans, Inc.,148 Ga. App. 318, 251 S.E.2d 168, 169-70 (1978). "When a judgment is amended, it is as though the entire action had been conducted in the correct name of the [party]." Southern Trucking Serv.,Inc., 483 So.2d at 324.
In sum, under Mississippi law, an amendment is permitted so long as the evidence does not suggest that the misnomer "misled the parties into thinking that another [party] was meant." Id.
(quoting Cigan v. St. Regis House Hotel, 72 Ill. App.3d 884, 29 Ill.Dec. 38, 41, 391 N.E.2d 197, 200 (1979).
 3. The Law Applied to the Facts
In the case sub judice, no one disputes that Rich received a summons. The conservators simply explain that Rich didn't "remember anything about it" and that she was possibly misled by the misnomer or was not sufficiently competent to appreciate the consequences of her failure to respond. Record Vol. II, at 83. This explanation proved unpersuasive with the trial judge:
 There are several things that are requested, and I'm going to take them one by one as they were requested. The first thing that the Movant [the conservators] requested on behalf of Mrs. Rich was that the original process be quashed, and in determining whether or not the original process should be quashed I looked at two things: First is the summons itself in regards to the misnomer. Second, I looked at your argument as to the service. Now, in looking at the summons itself which, of course, is part of the court record, I basically was attempting to determine whether or not a person would have known they were being sued even though the name did not properly appear on the summons.
 The name which appears on the summons is Wilma Ritchie, R-I-T-C-H-I-E. In this case the actual name of the ward is Wilma Rich. The address is correct. The return is made by Deputy Gray, as he testified, and in accordance to his testimony he asked whether or not the person that answered the door was, in fact, Wilma Ritchie, and he certifies that he did hand deliver a copy to a Wilma Ritchie at this address. Then after looking at the summons in reviewing the complaint allegations set forth dealing with the same address, the same dates that everyone discussed, and I do find that although there is a misnomer in regards to the complaint and the summons, the same was sufficient to notify a reasonable person that they were being sued.
 In regards to the service I have a lot of problems with placing a burden on the Plaintiff to determine whether or not a Defendant is competent prior to the service of a process when there is no prior finding that a Defendant was in fact incompetent. So I am going to find that the service of process in this case was proper.
 The next thing that is requested by [the] conservators for Mrs. Rich is that the execution of process issued and served on the ward be quashed; this being the same, however, it is set out, Wilma Ritchie a/k/a Wilma Rich. I'm going to deny this request for the same reasons as set forth above in regards to the request that the other process be quashed, the original process be quashed.
Id. at 162-64.
 4. Disposition
This Court concurs in this decision; the misnomer should not be deemed fatal. The *Page 613 
record and appellant's brief are devoid of any evidence proving that the misnomer misled Rich. Most notable is Nevels' failure to claim during her testimony that the misnomer actually misled her; instead, she merely conceded that "she don't remember anything about [being served]." Rich admitted that she knows Nevels and remembers the attack; thus, it seems more likely than not that she understood the summons since it correctly identified Nevels as the "complainant." The process server, Deputy Ralph Gray, testified that Rich acknowledged she was indeed the individual named on the summons. According to Deputy Gray, Rich "acted normal" when he served her. And although several of Rich's family members testified that she was probably incompetent at the time, they did not seek to establish a conservatorship until 1989 —years after Rich received her summons. Id. at 45.
In sum, the evidence does not support the conservators' claim that the slight misnomer misled Rich. The judge's decision does not reflect an abuse of discretion and, therefore, this Court affirms.
 B. Whether the Default Judgment Should Have Been Set Aside?
This issue is two-fold; it questions the propriety of the default judgment itself and the propriety of the damages award of $180,000.
 1. Propriety of Denial of Motion to Set Aside Default Judgment: Applicable Law
A motion to set aside a default judgment or an order may be made under Miss. R.Civ.P. 60(b).[2] Relief may be granted upon a sufficient showing of fraud, mistake, or other justifiable reason. Generally, a Rule 60(b) motion will not be granted unless a three-prong "balancing" test is satisfied. Under this test, one must determine: (1) Whether the movant's basis for requesting relief is legitimate (e.g., Whether a justifiable reason is evidenced)? (2) Whether the movant has a colorable defense to the merits of the adjudged case? and (3) Whether the non-movant will be unduly prejudiced if the motion is granted? King v. King,556 So.2d 716, 719 (Miss. 1990).
This Court has stated that "[t]o be sure, default judgments are not favored and trial [judges] should not be grudging in the granting of orders vacating such judgments where showings within the rules have arguably been made." Guaranty Nat'l Ins. Co. v.Pittman, 501 So.2d 377, 387 (Miss. 1987); see also Bailey v.Georgia Cotton Goods Co., 543 So.2d 180, 182 (Miss. 1989). But granting of relief is not "a matter of right"; it is a matter "addressed to the sound discretion of the [judge]." Id. at 388 (citing Rules 55(c) and 60(b)). And this Court may not disturb a judge's exercise of discretion unless abuse is shown. Id.
The following sub-sections discuss the parties contentions regarding each of the three prongs.
 (a) First Prong: Is the basis for requesting relief legitimate?
In their attempt to satisfy the first prong, the conservators (movants) contend that the justifiable reason for setting aside the default judgment is Rich's incompetence. See M.R.C.P. 60(b)(6). Specifically, they cite Rich's age, lack of memory, and poor health (she supposedly has or had melanoma). In short, they suggest that her condition is reflective of "classic senile dementia." To support their contention, the conservators presented the testimony of various family members: (1) Betty Brown, who is Rich's daughter and one of Rich's two conservators; (2) Jean Jennings, Rich's granddaughter and the other conservator; (3) Rich, the defendant; and (4) Debbie McAdory, Rich's granddaughter.[3] The *Page 614 
family members simply agreed that Rich was old, lacked a good memory, and was in poor health. Surprisingly, no expert testimony was presented to show that Rich was incompetent.
Nevels counters by first noting that, although Rich's relatives claim that Rich was too incompetent to receive a summons, they curiously did not seek a conservatorship until after they learned of the default judgment. Nevels contends that the evidence simply does not "demonstrate . . . a condition of incompetence and affords no legitimacy" to Rich's utter failure to respond to the summons. Moreover, "[i]n Mississippi, as elsewhere, the law presumes sanity until the contrary is shown . . . [o]ld age, weakening of the memory and understanding, and occasional eccentric acts are not of themselves sufficient evidence of incapacity." Appellee's Brief at 7-8 (quoting Scott v. UnitedStates, 190 F.2d 134, 136 (5th Cir. 1951)).
 (b) Second Prong: Does a colorable defense exist?
The conservators cite the following as support for their contention that a colorable defense to the merits of Nevels' case exists: (1) "[T]he facts are clear that the attack was in fact the act of an intruder." (2) "[I]t is clear . . . that the attacker came through an unlocked door [and that] the unlocked door was not due to any fault of Mrs. Rich, but rather Mrs. Nevels' roommate." (3) "Clearly, defendant proved . . . there were defenses of contributory negligence and unforeseeable intervening acts of a third party." (4) And the evidence does not support the damages award. Appellant's Brief at 12-13.
Nevels counters that the conservators offered no testimony "to demonstrate any reasonable conduct on the part of the defendant in maintaining reasonable security in the boarding house premises" which is located in a "slum section" of Jackson. "To the contrary, the only testimony addressing the events surrounding the assault suffered by Ms. Nevels relates to what [security measures were taken] after the [assault]." Appellee's Brief at 8-9. Finally, Nevels contends that she presented convincing testimony and exhibits to prove damages; for example, she presented the expert testimony of Barbara Goff, M.D., who treated her "for psychiatric problems and emotional upset" due to the assault.
 (c) Third Prong: Will setting judgment aside prejudice Nevels?
The conservators contend that no prejudice will result for the simple reason that Nevels had been "inordinately tardy and negligent in prosecuting her action." Appellant's Brief at 3.
Nevels counters that "substantial" health and financial prejudice will certainly result if the judgment is overturned. Appellee's Brief at 4 10-11.
 (d) The Trial Judge's Opinion
The trial judge rejected the conservators' contentions and rendered the following lengthy opinion from the bench:
 The . . . request that is made in reading from your [the conservators'] motion "In the alternative set aside the default judgment entered in this cause and allow the conservators to file an answer in this action on behalf of the ward so that it may proceed to a trial on the merits and/or for general relief." This is perhaps the toughest request, and in regards to this request I think this is where we properly address the competency issue. It appears to be well settled law in the State of Mississippi that a person is presumed competent unless proved otherwise. That's in Scott v. United States, and that's a 5th Circuit Court of Appeals case. It's a 1951 case.
 First of all, let me address the competency, and then we'll go on to the three criteria for determining whether or not a default judgment should be set aside because I do think the competency is the first issue which we need to address, the first criteria being the nature and legitimacy of the Defendant's reasons for the default; that is, whether or not the Defendant has good cause for default, and of course, competency goes to the heart of this issue. Just about every witness that testified testified in regards to Mrs. *Page 615 
Rich, now the ward's, competency. Ms. Brown testified that Mrs. Rich started losing weight in 1987; that she had surgery in 1987, but this surgery and ill health came after the service of process; that she noticed that Mrs. Rich's mental state "would come and go" back in 1987. Ms. Brown further testified that she was sometimes rational and sometimes not, and Mrs. Rich started declining in the middle of 1987 both physically and mentally. She stated that in July of 1987 her mother was not competent to accept process in her opinion.
 Ms. Jennings, and these once again are the conservators and daughters of the ward Mrs. Rich, testified that her mother's physical condition began to decline in early 1987 and that her mental condition was declining in 1987. She too stated that she would be on and off or have good days and bad days. She didn't think her mother would recognize process in 1987; that her mother was 76 when process was served. She stated that during this period of time her mother had good days and bad days.
 Then our next witness was Mrs. Rich who basically shed no light as to her being incompetent during 1987. Then we had Mr. Bill Brown who testified that she would not have known what to do if she was served the papers during this period of time in '87; that he in fact was living there during this period of time in '87. Mrs. McAdory testified that her grandmother was declining during this period of time.
 In looking back at each witness, each witness testified also as to the ward, Mrs. Rich's, competency. Ms. Brown testified that her mother was signing checks and paying bills back in 1987 and up until recently; that her mother did not have any insurance in 1987 on the business but had not had any as far as she knew since 1957. Ms. Brown testified the address on the summons was correct; that her mother had operated a boarding house for most of 36 years; that she had filed income tax and was current on her income tax; that she employed a couple named Nancy and Larkin Lewis — I think those names are correct — that she had certain reports to fill out because most of her boarders were on Social Security, and in 1987 she had certain reports which she had to fill out and submit to the Social Security, which she did, and she had a small mortgage on the property and that she maintained the mortgage and kept it current and took care of the utilities and the taxes. Ms. Jennings testified that in July of 1987 that Mrs. Rich was handling her financial affairs; that she took care of mentally handicapped people; that there was no danger of the property being lost because of failure to pay taxes; that Mrs. Rich stayed in her own house and, in fact, still lives alone, spent last night in her own house; that Mrs. Rich had recently saved up money to pay the first installment on this year's taxes or made arrangements to pay the first installment on this year's taxes; that she handled the collection of rent, setting of rents, made and supervised deposits, handled her own Social Security as well as others'; that she could read and write, although this may have been limited; that Mrs. Rich was in fact the payee on many of the boarders' Social Security checks, and she would deposit these checks, take rent out and refund the rest to the residents. Mrs. Rich during 1987 and up to the present was the only person who could sign on her account. Even though some of these checks may have been written out, she would sign on the checks. She saw to it that the utilities were paid, MP L, Mississippi Valley Gas, water, South Central Bell.
 There are numerous other things in the record, and I think I've gone through it sufficiently. There have been numerous other statements that were made by Ms. Jennings in regards to Mrs. Rich. Mrs. Rich on her own testimony seemed to remember and be able to relate to the Court basically everything she was questioned about with the exception of things that happened many years in the past, for example, the death of a first husband and her second husband, but as far as recent events or address events surrounding Ms. Nevels' attack, Mrs. Rich seemed to understand them and was able *Page 616 
to relate not only her cancer surgery, hernia surgery and heart attack but also the chronological order in which they occurred. She explained how she took out burial insurance on all the patients and how that had become more expensive over the years.
 Because of this I think, and like I said, the record will reflect numerous other things, that Mrs. Rich was in 1987 competent. I don't think the Chancery Court is in a position to find that she was not competent in 1987, and I'm certainly not in a position to find that she was not competent in 1987.
 The second criteria which we must determine or second part of the balancing test is whether or not the Defendant, in fact, has a colorable defense to the merits of the claim. Well, I think that there is a defense to this cause of action, but I can't say that there's a likelihood based on what I've heard today or a substantial likelihood.
 The third part of the balancing test is the nature and extent of the prejudice which may be suffered by the Plaintiff if the default is set aside. The cases which you've submitted to me set forth that time is one element of this which needs to be considered; the time since the incident, which, of course, has been substantial now, because of the memory of the witnesses. I think with my docket the way it is right now it would be at least another year before this case would be able to be tried if it was answered today. Also, time in regards to money, in regards to the business affairs, and I'm not sure that with Mrs. Rich's business in the shape it is in now that it will continue to be an ongoing business for any period of time.
 Because of these reasons I am going to deny the motion to set aside the default judgment. In regards to the motion to correct the judgment I refer to Southern Trucking v. Mississippi Sand and Gravel, and I think I need to once again go back to determine whether or not the initial process or initial suit as filed and served would seem to indicate that the party upon which the suit was served was being sued and that they were, in fact, the correct party. I think although we are now a notice notice pleading state and not a fact pleading state, I think the facts set forth in the complaint were sufficient to allow Mrs. Rich to understand that she was being sued and that she was, in fact, the proper Defendant, and there's nothing to indicate that she was not the proper Defendant throughout these proceedings; therefore, I'm going to allow the judgment to be corrected. I'm going to sustain that motion and allow the judgment to be corrected. . . .
Vol. II, at 164-70.
 (e) Disposition
Perusal of the record and briefs leads this Court to conclude that the record is devoid of evidence reflecting error of law or abuse of discretion. Indeed, the conservators' contentions pale when compared to another case in which this Court unanimously refused to set aside a default judgment. Compare H W Transfer Cartage Serv., Inc. v. Griffin, 511 So.2d 895, 899 (Miss. 1987) (case in which this Court refused to set aside default judgment because the defendant "imprudently . . . did nothing, made no follow-up inquiry, and for all practical purposes let the matter drop until some five months later when it found out about the default judgment"), with the case sub judice
(Rich's conservators did nothing until some two years later when they found out about the default judgment).
In sum, this Court — after having balanced the interest of Nevels and Rich's conservators — concludes that an inequity would result if the judgment were not given any future force or effect. The default judgment must remain undisturbed. The judge's refusal to set it aside is affirmed.
 2. Propriety of the Damages Award: Disposition
The damages award of $180,000 is without evidentiary support and cannot be affirmed. The only evidence discoverable in the record are two one-page bills: (1) one from Dr. Charlton S. Stanley in the amount of $120.00 for "forensic consultation" and a "telephone conference," and (2) *Page 617 
the other from Dr. Barbara Goff in the amount of $1045.00[4]
presumably for psychiatric care. This simply does not add up to the award of $180,000. Assuming arguendo that this award also accounts for punitive damages, the dollar amount is not determinable from the record. In his written "judgment," the trial judge merely concluded that Nevels "should be and hereby is awarded judgment . . . in the sum of $180,000." Vol. I, at 11. This Court cannot "blind" itself and permit an award which is virtually devoid of substantiation. See Hooten v. State,492 So.2d 948, 950-51 (Miss. 1986) (Writing for the Court, Justice Patterson declared: "[W]e are . . . authorized to reverse for an abuse of discretion [if] we find [that the trial judge's decision] was `arbitrary.'"). See also Strickland v. Rossini,
No. 07-CA-59266, Slip Op. at 11-12 ___ So.2d ___, ___-___ (Miss. Dec. 12, 1990).
In sum, the award is vacated. The case is remanded for a hearing on the damages issue alone. This opinion should serve as notice that damages awards must be supported by evidence, and such evidence must be reflected in the record if it is to be affirmed on appeal.
 III. CONCLUSION
For the foregoing reasons, the judgment is affirmed — with the exception of the damages award. The damages award is vacated and the issue is remanded for an evidentiary hearing.
DENIAL OF MOTION TO SET ASIDE DEFAULT JUDGMENT AFFIRMED.
DAMAGES AWARD VACATED AND REMANDED FOR AN EVIDENTIARY HEARING.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., not participating.
[1] Basically the boarding house was a group home for former mental patients of Whitfield State Hospital.
[2] Rule 55(c) also provides an avenue of relief: "For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."
[3] Bill Brown, Rich's grandson, also testified; however, he did not provide any information regarding her mental competence. He did note that she had had surgery for melanoma.
[4] This amount seems to have been offset by payments by Rich's insurer.