# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01775-SCT

*DAVID TATUM, ADMINISTRATOR OF THE ESTATE OF D. MARSHALL TATUM, DECEASED*

*v.*

*AMANDA BARRENTINE a/k/a AMANDA LOPEZ*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 09/08/1999 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID WAYNE BARIA |
| ATTORNEY FOR APPELLEE: | JOHN R. REEVES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/18/2001 |
| MOTION FOR REHEARING FILED: | 06/14/2001 |
| MANDATE ISSUED: | 11/2/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2. This life insurance proceeds dispute comes to this Court on appeal by the insured's estate from the judgment of the Circuit Court of Attala County, Mississippi directing a verdict in favor of the primary beneficiary, Amanda Barrentine a/k/a Amanda Lopez. Finding no reversible error, we affirm.

### FACTS AND PROCEEDINGS BELOW

¶3. D. Marshall Tatum ("Tatum") met Amanda Barrentine ("Barrentine") while they worked together at Mississippi Sportswear in Kosciusko, Mississippi between 1995 and 1996. Over time, Tatum became quite fond of Barrentine. He bought her lunch on a daily basis and continually purchased flowers and other gifts for her. Tatum's estate alleges that Barrentine falsely led Tatum to believe that she would become his wife and that he later relied on this promise. Barrentine claims that she never shared Tatum's level of infatuation nor did she ever promise to marry him.

¶4. In December of 1997, Tatum applied with Kansas City Life Insurance Company for a life insurance policy on his life. He named Barrentine as the primary beneficiary of the policy proceeds. Gary Bryan, insurance agent for Kansas City Life Insurance, asked Tatum what relation Barrentine was to him. Tatum responded that Barrentine was his girlfriend. Bryan falsely informed Tatum that the person designated as beneficiary must be a blood relative or have an insurable interest. It was at this point that Tatum responded that Barrentine was, in fact, his fiancee. The policy was issued, and Tatum's estate was named as secondary

beneficiary of this policy. Barrentine maintains that she was not aware of the insurance policy or the fact that she was named beneficiary.

¶5. On February 10, 1998, Tatum was tragically killed in an automobile accident. Within a few weeks, Barrentine was contacted by a representative of the insurance company informing her that she was the beneficiary of Tatum's policy. The representative informed her that another company representative would contact her soon to discuss the matter further. Two or three weeks passed, and Barrentine heard nothing from the insurance company. Barrentine then contacted a former co-worker of Marshall's to find out the insurance company's name. Barrentine then called Kansas City Life Insurance Company and spoke with William Stetzler. Stetzler instructed her to fill out a claimant's statement and to return it to his office. She filled out the form and described her relationship to Tatum as one of friendship. In the meantime, Tatum's estate wrote a demand letter to Kansas City and demanded payment of the insurance proceeds. Since two parties were claiming rights to the proceeds, Kansas City put a hold on payment until the matter could be resolved.

¶6. Tatum's estate, represented by David Tatum as administrator (the Estate), filed a complaint for declaratory judgment in the Circuit Court of Attala County on June 10, 1998. The complaint alleged that Barrentine "knowingly and fraudulently induced D. Marshall Tatum, deceased, to rely on her promise of marriage and considered her to be his fiancee." The insurance proceeds were interpled by Kansas City on July 21, 1998.

¶7. The Estate claimed that Barrentine's answer was due on July 10, 1998, and when it was not filed by that date, the Estate asked that the circuit clerk make an entry of default against Barrentine. The circuit clerk of Attala County entered an Entry of Default against Barrentine on July 14, 1998. Barrentine had also filed her Answer on July 14, 1998 and therein a counterclaim for declaratory judgment. Barrentine filed a Motion to Set Aside Entry of Default on August 12, 1998, and the Motion was granted.

¶8. Trial was held on September 8, 1999, and after the Estate rested, the court directed a verdict in favor of Barrentine. On October 19, 1999, the trial court denied the Estate's Motion for New Trial and Motion to Correct or Amend Judgment. The Estate made a timely appeal to this Court on October 26, 1999.

¶9. On October 27, 1999, Barrentine filed a Motion to Release Funds which was granted on December 13, 1999. The court ordered the Circuit Clerk of Attala County to pay the funds to Barrentine if the Estate failed to post a supersedeas bond in the amount of $75,000.00 within 30 days. The Estate did not post the bond, and the funds were released to Barrentine.

¶10. The Estate alleges the following assignments of error:

**I. WHETHER THE LOWER COURT ERRED IN SETTING ASIDE THE ENTRY OF DEFAULT?**

**II. WHETHER THE LOWER COURT ERRED IN REFUSING TO ALLOW DISCOVERY TO BE CONDUCTED OUTSIDE OF THE NINETY DAY PERIOD PRESCRIBED BY U.C.C.C.R. 4.04(A)?**

**III. WHETHER THE LOWER COURT ERRED IN GRANTING DEFENDANT'S MOTION IN LIMINE REGARDING PLAINTIFF'S TRIAL WITNESSES?**

**IV. WHETHER THE LOWER COURT ERRED IN GRANTING A DIRECTED VERDICT?**

**V. WHETHER THE LOWER COURT ERRED IN REFUSING THE PLAINTIFF AN APPEAL WITHOUT THE NECESSITY OF A SUPERSEDEAS BOND?**

**VI. WHETHER THE LOWER COURT ERRED IN GRANTING DEFENDANT'S MOTION TO RELEASE FUNDS?**

## DISCUSSION OF LAW

¶11. This Court conducts a de novo review in cases where a directed verdict has been granted. *Vu v. Clayton*, 765 So.2d 1253, 1254 (Miss. 2000) (citing *Pace v. Financial Sec. Life of Miss.*, 608 So.2d 1135, 1138 (Miss. 1992). "If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. *Pace*, 608 So.2d at 1138. This Court has also held that the trial court should submit a question to the jury if the evidence raises a fact question upon which reasonable jurors could disagree. *Vines v. Windham*, 606 So.2d 128, 131 (Miss. 1992)).

### I.

¶12. The first question presented to this Court is whether the circuit court erred in setting aside the entry of default? M.R.C.P. 55(c) states: "[f]or good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Judgment by default had not been entered in this case. The circuit clerk of Attala County made an entry of default against Amanda Barrentine on July 14, 1998. An entry of default can be set aside if "good cause" is shown to the court. M.R.C.P.55(c). The Estate also made a Motion to Enter Default Judgment against Barrentine. Since the entry of default was set aside, the Motion for Default Judgment was effectively denied the same day.

¶13. The Estate argues that there are three factors that a court must consider before setting aside an entry of default: (1) whether the movant's basis for requesting relief is legitimate, (2) whether the movant has a colorable defense to the merits, and (3) whether the nonmovant will be unduly prejudiced if the motion is granted. *Rich ex rel. Brown v. Nevels*, 578 So.2d 609, 613 (Miss. 1991). The Estate mistakenly assumes that these factors apply to an *entry of default*. However, this case deals with setting aside a default judgment. It is again important to note that a default judgment had not been entered in this case. Again, M.R.C.P. 55(c) states that an entry of default may be set aside upon a showing of "good cause."

¶14. In Barrentine's motion to set aside the entry of default, she argued several defenses. First, Barrentine urged the court that the entry of default should be set aside because she is the named beneficiary of the life insurance policy. Next, Barrentine argued that she was not actually in default since her Answer, Cross-Claim and Counterclaim was filed on the same date of July 14, 1998. Another defense pointed out in this motion was that the Estate failed to follow the clerk's entry of default with an affidavit or other proof that entry of default was proper. M.R.C.P. 55(a).

¶15. "[T]he decision to grant or set aside a default judgment is addressed to the sound discretion of the trial court." *Williams v. Kilgore*, 618 So.2d 51, 55 (Miss. 1992) (citing *Pointer v. Huffman*, 509 so. 2d 870, 875 (Miss. 1987)). The discretion must be exercised in conformity with the rules set forth in M.R.C.P.

55(c) and 60(b). ***Guar. Nat'l Ins. Co. v. Pittman***, 501 So.2d 377, 388 (Miss. 1987). This Court has also held that "[a]bsent abuse of discretion, we will not disturb the rulings of the trial court on a default judgment. ***Id.***

¶16. Based on the record, we hold that the circuit judge was certainly within his discretion to set aside this entry of default. Barrentine's motion provided numerous defenses that established "good cause" consistent with M.R.C.P. 55(c). "[A]n application for vacation of such a judgment is addressed to the sound discretion of the trial court." ***Pittman***, 501 So.2d at 388 (citing ***Bryant, Inc. v. Walters***, 493 So.2d 933, 936-37 (Miss. 1986)). For this reason, the Estate's argument fails.

## II.

¶17. The second issue presented to this Court is whether the circuit court erred in refusing to allow discovery to be conducted outside of the ninety day period prescribed by Uniform Rule of Circuit and County Court Practice 4.04(A)? "All discovery must be completed within ninety days from service of an answer by the applicable defendant." U.C.C.C.R. 4.04(A). The Estate filed its complaint on June 10, 1998. Barrentine filed an answer on July 14, 1998. The Estate did not make its first request for admissions until December 30, 1998. This request was made 169 calendar days after Barrentine filed her answer. Barrentine objected to certain interrogatories as violating U.C.C.C.R. 4.04(A) and as being duplicitous. Accordingly, the Estate filed a Motion to Compel Production of Evidence. The trial court ruled that the Estate failed to comply with U.C.C.C.R. 4.04(A), and therefore denied the Estate's Motion to Compel Production of Evidence.

¶18. Trial courts have considerable discretion in discovery matters and decisions will not be overturned unless there is an abuse of discretion. ***Dawkins v. Redd Pest Control Co.***, 607 So.2d 1232, 1235 (Miss.1992). In determining whether a trial court abused its discretion in a discovery matter, the applicable standard is as follows:

> [A] trial court's discretion in the discovery area is generally guided by the principles that (a) the court follow the general policy that discovery be encouraged, (b) limitations on discovery should be respected but not extended, (c) while the exercise of discretion depends on the parties' factual showings disputed facts should be construed in favor [of] discovery, and (d) while the importance of the information must be weighed against the hardships and cost of production and its availability through other means, it is preferable for the court to impose partial limitations on discovery rather than an outright denial.

***Id.*** at 1236.

¶19. According to the record, the Estate filed its first set of requests for production 169 calendar days after Barrentine had filed her answer. This was 79 days past the 90 day limitation. U.C.C.C.R. 4.04(A). The Estate argues that by denying its Motion to Compel, the trial judge abused his discretion. In support of this argument, the Estate submits to this Court that "ample time for discovery remained," and "it may be presumed that the prejudice to the [party seeking discovery] was great." Contrary to this allegation, the Estate fails to demonstrate any prejudice to its case as a result of the denied motion. In fact, there is no evidence in the record that the Estate did not receive the information it is now complaining of needing. Barrentine was the only witness to her defense, and she was previously deposed by the Estate. In the Estate's interrogatories, it again only asked questions specific to Barrentine, which had already been asked

when she was deposed.

¶20. As the circuit judge noted, the Estate's failure to comply with the rules of procedure was its own error, and we hold that it was certainly within the trial judge's discretion to apply U.C.C.C.R. 4.04(A). The Estate's attorney even admitted at the trial that "[i]t is my fault that I wasn't able to conduct discovery." The Estate was not prejudiced due to the circuit judge applying Rule 4.04(A). Not only does the Estate not make any arguments to this point, we find nothing in the record to indicate otherwise. Barrentine was previously deposed by the Estate and the additional interrogatories were not only submitted outside of the ninety day period, they were also duplicitous.

### III.

¶21. The third issue presented to this Court is whether the circuit court erred in granting Barrentine's Motion in Limine as to the Estate's trial witnesses? The factors to be considered when reviewing whether a motion in limine should be granted were established in *State v. Quick*, 226 Kan. 308, 311, 597 P.2d 1108 (1979), and adopted by our Court in *Whittley v. City of Meridian*, 530 So.2d 1341, 1344 (Miss. 1988). A motion in limine "should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury."

¶22. On October 13, 1998, the Estate responded to Barrentine's interrogatory number two. That interrogatory stated "for each person you shall call as a witness at the trial or any other court action involving this case please state: the witness's name, address and business and residential telephone numbers." The Estate objected to this question by responding that the information was not discoverable. Fourteen days before trial, which was approximately nine working days before trial, the Estate supplemented this response. Barrentine received a list of seven witnesses that may be called to testify by the Estate. At trial, the Estate argued that this supplementation was seasonable.

¶23. "This Court has laid down no hard and fast rule as to what amounts to seasonable supplementation or amendment of answers." *Eastover Bank for Sav. v. Hall*, 587 So.2d 266, 272 (Miss. 1991). In this case, the predominant concern is whether there would be prejudice to the appellee. *Id.* M.R.C.P. 26(f)(1) states:

> [a] party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons (i) having knowledge of discoverable matters, or (ii) who may be called as witnesses at the trial, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which his is expected to testify, and the substance of his testimony.

M.R.C.P. 26(f)(1).

¶24. Although the trial judge believed that the Estate had not seasonably supplemented its response, and that by allowing the witnesses to testify may be inconsistent with the rules, he allowed five of the Estate's seven witnesses to testify. The Estate was allowed to call five of its proposed seven witnesses in its case-in-chief because the judge believed that Barrentine had actual notice of them. The judge ruled that Jack Story, Janice Zollicoffer, Gary Bryan, and Stacy Farrell Nail were allowed to testify. The judge reserved his ruling on the other three witnesses until they were actually called by the Estate. He stated, however, the remaining witnesses would only be allowed as rebuttal witnesses.

¶25. The first witness called by the Estate was Jewell Tatum, the deceased's mother. Her name was also included on the supplementation list but the judge had not ruled on her. Over Barrentine's extensive argument, the judge also allowed Jewell to testify because she was the beneficiary under the estate. The judge reasoned that the Barrentine should have anticipated that she would be called. In sum, five of the seven supplemented witnesses were allowed to testify although the judge believed that the Estate's supplementation was not seasonable.

¶26. During the course of trial, the Estate called Jack Story, Janice Zollicoffer, Amanda Barrentine, Gary Bryan, Stacy Farrell Nail, and David Tatum as part of its case-in-chief. The Estate tried to call Mary Palmertree, Barrentine's next door neighbor, as a witness in its case-in-chief. The judge had previously ruled that she could only be called as a rebuttal witness because she had not been identified to Barrentine. When the Estate attempted to call her in its case-in-chief, the judge reiterated that ruling and said she could only be called as a rebuttal witness.

¶27. The Estate now argues that Barrentine's motion in limine was erroneously granted in regards to its witnesses. As earlier mentioned, five of the seven witnesses were not excluded from testifying. In its brief, the Estate only raises arguments in regards to Mary Palmertree.

¶28. We hold that in applying the factors adopted by this Court, the trial judge did not err by limiting Mary Palmertree to only testify regarding firsthand knowledge and as a rebuttal witness. First, the court enforced M.R.E. 701, limiting lay witness testimony to firsthand knowledge. The court reasoned that by allowing these witnesses to give opinion testimony in regards to Barrentine and Tatum's relationship would unfairly prejudice the jury since it was not based upon any firsthand knowledge.

¶29. The standard of review regarding the admission or exclusion of evidence is whether the trial court abused its discretion. *Thompson Mach. Commerce Corp. v. Wallace*, 687 So.2d 149, 152 (Miss. 1997). Since the trial judge apparently considered the factors as set forth in *Whittley*, he did not abuse his discretion by placing a limitation on Mary Palmertree's testimony.

## IV.

¶30. The fourth issue presented to this Court is whether the trial court erred in granting a directed verdict in favor of Amanda Barrentine? The standard of review in cases where a directed verdict has been granted is as follows: "This Court conducts a de novo review of motions for directed verdict.... If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted." *Pace*, 608 So. 2d at 1138 (citation omitted). Additionally, this Court has held that "[a] trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." *Vu v. Clayton*, 765 So. 2d at 1254 (Miss. 2000) (quoting *Vines v. Windham*, 606 So. 2d at 131). The Estate argues that it presented evidence from which a reasonable jury could conclude that Barrentine perpetrated a fraud on Tatum and that Barrentine abused her confidential relationship with Tatum so that a constructive trust should be imposed.

¶31. The trial judge made a careful determination in the record by going through all of the evidence presented before directing a verdict in favor of Barrentine. First the judge considered the issue of fraud. In order to establish its claim of fraud, the Estate was required to prove, among other things, that Barrentine falsely represented to Tatum that she would marry him. *See Levens v. Campbell*, 733 So. 2d 753, 761-

62 (Miss. 1999) (stating that among the elements of fraud are a representation and its falsity). *See also Martin v. Winfield*, 455 So. 2d 762, 764 (Miss.1984) (elements of fraud must be proven by clear and convincing evidence). The trial judge accurately concluded that the Estate offered no evidence whatsoever of a false misrepresentation by Barrentine to Tatum. The Estate argues that Barrentine's deposition testimony established that she told Tatum she would marry him. Barrentine stated in her deposition that she told Tatum "in the future we could progress with our relationship." This statement is insufficient to raise a reasonable inference of a promise of marriage on the part of Barrentine. Nothing in the record established that Barrentine ever promised to marry Tatum. Accordingly, the judge correctly granted the directed verdict on the issue of fraud in favor of Barrentine.

¶32. The Estate also argues that it presented evidence from which a jury could reasonably infer that a confidential relationship existed between Barrentine and Tatum. This Court has held that for a fiduciary or confidential relationship to exist between two persons, there must be a relation in which one person is in a position to exercise a dominant influence upon the other. *In re Will and Estate of Varvaris,* 477 So. 2d 273, 278 (Miss. 1985); *Hendricks v. James*, 421 So. 2d 1031, 1041 (Miss. 1982). The judge correctly concluded that there was no evidence in the record that Barrentine had any overmastering influence on Tatum. In fact, the Estate's evidence actually showed that Tatum was an intelligent man who knew what he was doing. The judge noted that, if anything, Barrentine was dependent on Tatum. Tatum was paying her bills, buying her things, and running her affairs. Viewing the evidence favorable to the Estate and drawing from that evidence all reasonable inferences, we cannot say there existed any question of fact upon which reasonable jurors might disagree. The directed verdict in favor of Barrentine is affirmed.

## V.

¶33. The fifth issue presented to this Court is whether the trial court erred in ordering the Estate to post a supersedeas bond? The Estate argues that pursuant to Miss. Code Ann. § 11-51-99 (Supp. 2000), it should not have been ordered to post a supersedeas bond. Although Tatum, on behalf of the Estate, was ordered by the circuit judge to post the bond, he did not. Nothing in this case turns on whether David Tatum was acting in his capacity as administrator because he loses on the merits. Accordingly, this issue is moot. Tatum should have sought relief from this Court under M.R.A.P. 8(a) which provides:

> The appellant shall be entitled to a stay of execution of a money judgment pending appeal if the appellant gives a supersedeas bond, payable to the opposite party, with two or more sufficient resident sureties, or one or more guaranty or surety companies authorized to do business in this state, in a penalty of 125 percent of the amount of the judgment appealed from, conditioned that the appellant will satisfy the judgment complained of and also such final judgment as may be made in the case. The clerk of the trial court shall approve any such bond and the approval of the supersedeas bond by the clerk shall constitute a stay of the judgment. In the event the clerk declines to approve the bond, or the clerk's approval is contested, or the appellant seeks a stay on any basis other than compliance with this subdivision, the requirements of Rule 8(b) apply.

M.R.A.P. 8(a).

## VI.

¶34. The last issue presented to this Court is whether the lower court erred in granting Barrentine's motion to release funds? Because Tatum's estate did not take advantage of Miss. Code Ann. § 9-5-83 (1991), the

funds were properly released to Barrentine. Therefore the last issue presented to this Court is moot.

¶35. For all of the foregoing reasons, the judgment of the Circuit Court of Attala County is affirmed.

¶36. **AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**