# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01795-SCT

*ALLSTATE INSURANCE COMPANY*

*v.*

*JERRY GREEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/1999 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LANNY R. PACE |
| ATTORNEY FOR APPELLEE: | DUNCAN L. LOTT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED IN PART AND REMANDED - 06/21/2001 |
| MOTION FOR REHEARING FILED: | 7/2/2001; denied 8/23/2001 |
| MANDATE ISSUED: | 8/30/2001 |

**BEFORE BANKS, P.J., SMITH AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Jerry Green filed suit in Tishomingo County, Mississippi on August 4, 1998, seeking judgment against Allstate Insurance Company for repair labor done and materials furnished in 1993 by Green's repair shop in the State of New York on a 1992 BMW automobile owned by Allstate. Green's complaint also sought payment for storage fees accruing from 1993-1998 in New York and in Mississippi. Green obtained service of process on Allstate through the CT Corporation, Allstate's registered agent in Mississippi.

¶2. Allstate filed no response, and on October 19, 1998, Green filed his application for Entry of Default, against Allstate with the Tishomingo County Circuit Clerk. The clerk entered the default. Allstate promptly responded with a Motion to Set Aside Entry of Default and on December 11, 1998, the motion was heard by the circuit court judge who denied Allstate's motion, held that the Entry of Default should remain in effect, and granted Allstate leave to conduct discovery on the issue of damages. After completion of routine discovery, a hearing was conducted on June 4, 1999, with testimony from Green and arguments of counsel, following which the circuit judge found that Green was entitled to $8,130.80 for repair work and hauling charges but not to any storage charges. Judgment was entered accordingly. Allstate timely filed a Motion for Amendment of Findings and Judgment or in the Alternative for a New Trial, which was denied by the circuit judge after hearing arguments of counsel.

¶3. Aggrieved, Allstate appeals, raising the following issues:

**I. WHETHER THE TRIAL COURT ERRED IN NOT SETTING ASIDE THE ENTRY OF**

**DEFAULT.**

**II. WHETHER THE TRIAL COURT ERRED IN NOT FINDING AS A MATTER OF LAW THAT THE PLAINTIFF WAS NOT A LIENHOLDER UNDER MISSISSIPPI LAW.**

**III. WHETHER THE TRIAL COURT ERRED IN NOT FINDING AS A MATTER OF LAW THAT THE PLAINTIFF WAS NOT ENTITLED TO CONTRACTUAL DAMAGES.**

**IV. WHETHER THE TRIAL COURT ERRED IN BASING THE JUDGMENT ON DOCUMENTS OFFERED BY THE PLAINTIFF.**

**V. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFF'S PROOF OF DAMAGES WAS SUFFICIENT.**

¶4. Green raises only one issue in his cross-appeal:

**VI. WHETHER THE TRIAL COURT ERRED IN FAILING TO ALLOW PLAINTIFF DAMAGES FOR STORAGE OF THE SUBJECT VEHICLE.**

## FACTS

¶5. Allstate was the insurer of a 1992 BMW which is the subject of this appeal, and the BMW was leased in New York state. In October of 1992, the insured reported the vehicle stolen, and Allstate, pursuant to the terms of the insurance policy, purchased ownership of the BMW. In January of 1993, the vehicle was brought into a New York City automotive repair shop co-owned by Green. An unidentified individual left the BMW for body and mechanical work, which according to Green's testimony, was completed by workers in his shop. The person who brought the BMW to the shop to be repaired never returned for it, and after checking with the New York Motor Vehicle Bureau, Green learned that it was titled to Allstate Insurance Company, receiving a report to that effect from the MVB in March 1996.[1] Green made the first of several contacts with Allstate in 1996 by calling one of its New York adjusters and requesting a $15,000 payment for services rendered and storage.[2] In 1997, Green left New York and moved to Mississippi, bringing the BMW with him. He kept it stored at his apartment in Tishomingo County.

¶6. Green eventually filed suit asking the circuit court to enter a judgment "for labor done and material furnished in the repair of the 1992 BMW and for storage." He further asked for a special order so that he could sell the BMW at public auction and apply the proceeds toward what he was owed.

¶7. Following the entry of default, at a separate hearing to determine damages, Green entered into evidence an estimate of the cost of repairs given by a mechanic in Tishomingo County to whom Green described the type of damage the BMW suffered. There was no statement or other contemporaneous documentation of the specific work done in 1993, only Green's memory and recollection of it which he described in 1998 to the Tishomingo County mechanic, who was not called as a witness. Green himself did not work on the BMW at any point, and he provided scant and contradictory testimony as to the nature of the original damages on the car. In spite of that, all of Green's testimony, including the hearsay estimate of the Tishomingo mechanic, was admitted by the circuit judge.[3] The trial court assessed damages of $6,727 for the New York repairs, $945 for transportation of the BMW to Mississippi and $458.80 for the Tishomingo repairs, for a total of $8,130.80. The court denied Green's request for storage fees. Allstate has appealed on all damages, and Green has cross-appealed on the storage fees.

## STANDARD OF REVIEW

¶8. The granting or denial of a default judgment is reviewed for an abuse of discretion. ***King v. Sigrest***, 641 So.2d 1158, 1161 (Miss. 1994). However, where such a decision by a trial court is based on an erroneous conclusion of law, this Court is empowered to take corrective action. ***Id.*** at 1162. A trial court's admission or exclusion of evidence is reviewed for abuse of discretion. ***Thompson Mach. Commerce Corp. v. Wallace***, 687 So.2d 149, 152 (Miss. 1997).

## DISCUSSION

### I. WAS THE TRIAL COURT CORRECT IN NOT SETTING ASIDE THE ENTRY OF DEFAULT?

¶9. This Court considers three factors when deciding whether to vacate a default judgment: (1) whether the defendant has good cause for the default, (2) whether the defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice to the plaintiff if the default judgment is set aside. ***King***, 641 So.2d at 1162 (quoting ***Williams v. Kilgore***, 618 So.2d 51, 55 (Miss. 1992)(internal citations omitted)). We have further indicated that the second factor, the presence of a colorable defense, outweighs the other two, and we have encouraged trial courts to vacate a default judgment where "the defendant has shown that he has a meritorious defense." ***Bailey v. Georgia Cotton Goods Co.***, 543 So.2d 180, 182 (Miss. 1989). In ***Clark v. City of Pascagoula***, 507 So.2d 70, 77 (Miss. 1987), discussing the discretionary power that circuit court judges possess in setting aside default judgments, this Court stated: "[t]he importance of litigants having a trial on the merits should always be a serious consideration by a trial judge in such matters Thus, any error made by a trial judge should be in the direction of setting aside a default judgment and proceeding with trial." (citing ***Bryant, Inc. v. Walters***, 493 So. 2d 933 (Miss. 1986)).

¶10. Allstate maintains that its failure to file an answer was due to excusable neglect, specifically miscommunications between its Mississippi office and its New York office over whether the BMW was actually covered by one of its policies. However, Allstate's attorney, during oral arguments for his Motion to Set Aside Default Judgment, conceded that Allstate had notice of the impending suit but could not offer any persuasive reason for why the company was unable to file a motion for additional time or information or simply file a preliminary answer and then have their questions answered in discovery. In light of those facts, and Green's assertion (which was not disputed by Allstate) that he has been trying to negotiate with the company for several years, the circuit court did not err in rejecting Allstate's excusable neglect defense.

¶11. However, based upon ***Bailey, Clark*** and ***Bryant***, the circuit court did err in denying Allstate's Motion to Set Aside Entry of Default, upon showing the existence of a colorable defense. With that in mind, we address the remaining issues.

### II & III. IS GREEN ENTITLED TO JUDGMENT UNDER MISSISSIPPI LAW REGARDING LIENHOLDERS AND CONTRACTUAL DAMAGES?

¶12. Green argues that entry of a default judgment precludes **any** attack on Allstate's liability - in other words, that Allstate has effectively admitted liability to Green and can only challenge the award of damages. Allstate, on the other hand, contends that the default judgment on the allegations of Green's complaint only means that Allstate has admitted that work was done on the BMW, but the legal questions concerning

liability and the nature and extent of damages cannot be determined. We agree with Allstate.

¶13. In *Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So.2d 977, 984 (Miss. 1992), this court noted the well-established rule that "the pleadings must lay a basis for any claim upon which relief can subsequently be granted." *See also Thomson v. Wooster*, 114 U.S. 104, 108, 5 S.Ct. 788, 29 L.Ed. 105 (1885)(holding default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill"); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)("There must be a sufficient basis in the pleadings for the judgment entered"). Thus Green can only seek relief supported by the facts, not conclusions, articulated in his complaint, and if those facts do not establish a legal basis for recovery, Green is not entitled to judgment, notwithstanding Allstate's neglect in failing to answer his complaint.

¶14. Miss. Code Ann. § 85-7-107(1999) states in pertinent part: "All motor vehicles **titled under 'The Mississippi Motor Vehicle Title Law' repaired for any person, and at his instance,** shall be liable for the price of the labor and material employed in constructing, manufacturing or repairing the same. . . ." (emphasis added). Under this plain language, a plaintiff who seeks to establish a mechanic's lien must first show that the vehicle to be encumbered is titled in Mississippi in order to satisfy an essential element of the claim. Green did not allege in his complaint that the BMW was titled in Mississippi. Further, he conceded before the circuit court that it has never been titled in Mississippi. Since Green's complaint facially failed to satisfy the statutory requirements of § 85-7-107, he must establish some alternate basis for recovery.

¶15. Green relies upon three cases in attempting to refute Allstate's arguments, all of which predate the passage of § 85-7-107. In *Moorehead Motor Co. v. H.D. Walker Auto Co.*, 133 Miss. 63, 97 So. 486 (1923), this Court addressed whether a mechanic's lien could take priority over the seller's title in a conditional contract of sale. *Moorehead* concluded that the mechanic's lien could take priority over the seller's title, but that the seller was not liable for repairs absent express or implied authority. *Moorehead*, 97 So. at 488.

¶16. In *De Van Motor Co. v. Bailey*, 177 Miss. 441, 171 So. 342, 344 (1936), this Court, reviewing similar facts, reaffirmed *Moorehead's* central holding that a mechanic's lien can take priority over a seller's title. However, the Court also stated bluntly that such a lien could only be obtained against the party who ordered the repairs and that awarding a judgment against the titleholder instead of the original possessor of the car was manifestly error. *De Van Motor*, 71 So. at 344-45 ("[S]imply because there was an implied authority for repairs, that did not create the relation of debtor and creditor between the two contending parties").

¶17. Finally, in *Theobald v. Sprouse*, 257 So. 2d 516, 517 (Miss. 1972), Theobald sold a car (title to which he believed that he had acquired) to Sprouse for $400, and Sprouse subsequently spent over $600 in repairs on the car. Later, GMAC, the record titleholder of the car, seized it through writ of replevin, and Sprouse sued Theobald under breach of warranty and mechanic's lien theories. *Id.* at 517-18. This Court concluded that a mechanic's lien was not available against Theobald, since he was not the titleholder of the car, and Sprouse should have proceeded against GMAC. *Id.* GMAC was not a party to the suit, however, and *Theobald* did not address the issues of whether the title status of the car (which was originally titled in Arkansas) would affect Sprouse's rights against GMAC, nor whether GMAC's consent was required to establish liability.

¶18. The cases cited by Green not only fail to support his argument, they undermine it. All the automobiles involved were titled in Mississippi except for the one in *Theobald*, where the titleholder GMAC was not a party to the suit, thus making the suggestion in *Theobald* that Sprouse sue GMAC mere dicta. Green claims that the three cases mentioned stand for the general proposition that a contractual duty to pay for repairs is created whenever a mechanic performs repair work that "preserves the property and permits its ordinary operation and prevents deterioration." In fact, however, these cases stand only for the principle that a mechanic's lien will take priority over a titleholder's right of possession. Except for the aforementioned *Theobald* dicta, they all reject the idea that liability attaches to the titleholder instead of the party who ordered the repairs. Finally, in each case, the repairs were made at the request of a party who had purchased or leased the car from the record titleholder, thus creating privity between the titleholder and the mechanic.

¶19. In the case sub judice, the BMW at issue had been reported stolen, presumably by the "unknown individual" mentioned in Green's complaint. Consequently, there is no privity between Allstate and Green sufficient to make Allstate liable for Green's repairs under a contract theory, and no statutory basis for concluding Green had a lien on the BMW itself. The record before this Court is not sufficient to conclude that Green's default judgment is sufficient to form the basis of a judgment against Allstate.

¶20. In addition to repair costs, Green also requested recovery for storing the BMW and for transporting it to Mississippi. However, Green's complaint does not ask for transportation costs, merely labor, material, and storage costs. Furthermore, Green has not identified any legal theory which would permit him to recover either transportation or storage costs. Green appears to base his claim for storage fees on ***Winter & Hirsch, Inc. v. Clanton***, 214 Miss. 228, 58 So.2d 508 (1952). While the Court in that case did grant daily storage fees, it was in response to a claim brought by a tow truck operator who transported the vehicle at the direction of a highway patrol officer, rather than under a mechanic's lien theory. 58 So.2d at 509. In any case, § 85-7-107 limits recovery to the costs of labor and materials, unlike § 85-7-251, which governs liens available for towing and storing motor vehicles. *Compare* Miss. Code Ann. §§ 85-7-107 & -251 (1999).

¶21. In short, Green's complaint is facially incapable of supporting the default judgment granted him, and the trial court abused its discretion by disregarding Allstate's colorable defense. We therefore reverse the entry of default judgment against Allstate and remand this case to the trial court.

### IV & V. DID THE TRIAL COURT ERR IN ADMITTING GREEN'S EVIDENCE AT THE DAMAGES HEARING?

¶22. The circuit court also erred in its assessment of what damages were due Green. Green claims that he is entitled to damages resulting from four distinct sources: (1) the bill for repairs performed at Green's New York Shop ("the New York bill"), (2) the costs of transporting the BMW to Mississippi, (3) the bill for repairs performed in Tishomingo County ("the Mississippi bill"), and (4) the cost of storing the BMW since the day it was left in his shop in 1993. Because a default judgment does not act as an admission as to damages by the defaulting party, the circuit court was obligated to hold a hearing on damages. ***Journey v. Long***, 585 So. 2d 1268, 1272 (Miss. 1991).

¶23. Allstate argues that the evidence offered in support of the New York bill, the transportation fee, and the Mississippi bill were all hearsay statements which are inadmissible under M.R.E. 803(6). According to Green's own testimony, he prepared the New York bill himself, approximately four years after the repairs

were made, based on an estimate by a mechanic who was not actually involved with those repairs. The transportation bill was purportedly prepared by agents of Associated Auto Carriers, which transported the vehicle to Mississippi for Green. The Mississippi bill was purportedly prepared by the Burcham Body Shop in Tishomingo County. In each case, only Green himself testified to the contents of the bills, which were also submitted as evidence. Allstate objected to the admission of all three as hearsay.

¶24. Hearsay is inadmissible under Mississippi law. M.R.E. 802. Such statements may only be properly admitted where they fit into one of the exceptions articulated in M.R.E. 803 & 804. *Quimby v. State*, 604 So.2d 741, 746 (Miss. 1992). Permitting such statements to be admitted is reversible error. *Murphy v. State*, 453 So.2d 1290, 1294 (Miss. 1984). Neither the trial court nor Green identified any exception into which the New York, transportation, and Mississippi bills would fit. Based on the record, the only possible exception is found in M.R.E. 803(6), which states:

> **(6) Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

M.R.E. 803(6). However, the New York bill was created several years after Green had the BMW repaired, and is thus too remote in time to satisfy this exception's requirements. Furthermore, Green did not make adequate showing that any of the statements were made (1) at or near the time the charges were incurred; (2) by persons with knowledge; or (3) in the regular course of business. The source of Green's information, as well as the method and circumstances of its preparation, clearly indicate lack of trustworthiness, particularly in light of the passage of more than five years and the absence of any contemporaneous documentation. Thus, the requirements of M.R.E. 803(6) are not met.

¶25. Green in his cross-appeal also claims that he was entitled to storage costs, both in New York and Mississippi. As was noted above, Green offers no basis under the law for concluding that he is entitled to storage costs so we affirm the trial court on that issue. However, even if he were legally entitled to storage costs, we would still affirm the trial court due to Green's failure to offer any reliable proof of his damages on this issue. A hearing to determine damages after a default judgment is subject to all the normal rules of evidence and proof. Miss.R.Civ.P. 55 cmt.; *see also Journey*, 585 So.2d at 1272. Green has thus far not provided any admissible evidence of exactly what a reasonable storage fee would be. Indeed, at the damages hearing, Green merely offered the arbitrary figures of $20 per day while the car was in New York and $10 per day while the car was in Mississippi. This figures were based entirely on the amount for which Green was sued in New York litigation dating back to 1987. *Id.* Furthermore, Green has offered no evidence that he suffered any detriment in storing the vehicle, as it apparently has been stored the entire time on private property at no cost to him. The evidence offered in support of storage costs is plainly insufficient to support a judgment.

## CONCLUSION

¶26. The trial court abused its discretion in refusing to set aside the entry of default judgment. Allstate clearly has a colorable defense because Green's complaint, even if all the facts alleged therein are taken as true, is facially incapable of proving Allstate's liability under either a mechanic's lien theory or contractual theory, the only two theories argued below. Mississippi law expressly states that a mechanic's lien is not available where the vehicle is not titled in this state, and in any case, it limits recovery to repairs and materials, thus eliminating the storage and transportation costs Green seeks. Miss. Code Ann. § 85-7-107 (1999). Furthermore, Mississippi case law rejects Green's argument that liability attaches to the titleholder instead of the party who ordered the repairs. The evidence Green offered at the damages hearing was largely inadmissible hearsay wholly inadequate to support the damages award. For the foregoing reasons, we reverse and remand to the trial court for further proceedings consistent with this opinion,[4] but affirm the trial court's denial of storage fees.

¶27. **ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: AFFIRMED.**

>   **PITTMAN, C.J., BANKS, P.J., SMITH AND WALLER, JJ., CONCUR. WALLER, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J., AND SMITH, J. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND EASLEY, JJ. MILLS, J., JOINS IN PART.**

>   **WALLER, JUSTICE, CONCURRING**:

¶28. While I agree with the majority's holding, I believe the distinction between what we have here, an *entry of default*, and a *default judgment*, needs to be emphasized.

¶29. Under M.R.C.P. 55(c), setting aside an entry of default only requires "for good cause shown." On the other hand, a default judgment is a final adjudication and therefore an appealable order. To set aside a default judgment one must satisfy one of the enumerated reasons under M.R.C.P. 60(b)[5] and all of the following factors: (1) whether the movant's basis for requesting relief is legitimate, (2) whether the movant has a colorable defense to the merits, and (3) whether the nonmovant will be unduly prejudiced if the motion is granted. *Tatum v. Barrentine*, No.1999-CA-01775-SCT, 2001 WL 302115, *3 (Miss. March 29, 2001) (citing *Rich ex rel. Brown v. Nevels*, 578 So. 2d 609, 613 (Miss. 1991)). The heightened review of M.R.C.P. 60(b) is simply not required when dealing with an entry of default. *See Tatum*, 2001 WL 302115, *3.

¶30. In determining whether "good cause" exists for setting aside an entry of default, a court may use the enumerated reasons under M.R.C.P. 60(b), but a court may also consider reasons not contemplated by M.R.C.P. 60(b) such as, inter alia, illness, clerical mistake, misunderstanding, or failure to receive service:

>   "[G]ood cause shown" . . . requires the moving party to provide an explanation for the default or to give reasons why vacation of the default entry would serve the interests of justice. Any of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) normally will justify relief from a default entry and in various situations a default entry may be set aside for reasons that would not be enough to open a default judgment. . . .

>   Relief from a default entry has been granted when the default was due to a mistake by counsel as to the applicable procedural rules or the effect of pre-answer motions on the time within which to

answer; the illness of counsel, the client, or an employee; a clerical mistake, confusion, or a misunderstanding by counsel; or defendant's failure to receive service. A Rule 55(c) motion also may be granted whenever the court finds that the default was not the result of gross neglect, that the nondefaulting party will not be substantially prejudiced by the reopening, and the party in default has a meritorious defense.

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2696 at 141-42; 143-49 (3d ed. 1998) (footnotes omitted).

¶31. I therefore concur with the result of the majority opinion and emphasize, by way of this concurring opinion, the lessened threshold when trial courts are confronted with motions for relief from an entry of default.

**BANKS, P.J., AND SMITH, J., JOIN THIS OPINION**.

**McRAE, PRESIDING JUSTICE, DISSENTING**:

¶32. Because it needed to file a motion for more time in order to prevent default and chose not to do so, Allstate acted at its own peril. Allstate cannot and did not give any explanation for failing to timely answer the complaint. A cavalier approach should be met with strict application of the rule. The default judgment against Allstate should therefore stand, as to hold otherwise would undermine the requirements that complaints be answered within thirty days and that good cause be shown to set aside default judgments. Accordingly, I dissent.

¶33. Mississippi Rule of Civil Procedure 55(c) states as follows:

**(C) Setting Aside Default.** For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

The key to unlocking the door to relief from default judgment pursuant to M.R.C.P. 60(b) is a threshold showing of excusable neglect or other good cause for failing to timely answer the complaint. The Comment to Rule 55(c) reiterates this point, stating that "[o]nce the default is established . . . his only recourse is to show good cause for setting aside the default under Rule 55(c) and, failing that, to contest the amount of recovery."

¶34. If good cause must be shown to set aside an entry of default, then it must also be shown before setting aside a default judgment. "[T]here is a more liberal standard for setting aside a default than the standard for setting aside a default judgment." *King v. Sigrest*, 641 So.2d 1158, 1162 (Miss. 1994).

¶35. The majority goes too far when it says that default judgments should be vacated whenever a defendant can show only the presence of a meritorious defense and not give any reason for not timely answering the complaint. In *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987), we refused to set a aside a default judgment in the absence of good cause, despite the fact that the defendant made a "substantial showing" that a meritorious defense to the claim existed. We explained ourselves as follows:

In the final analysis, this case presents the questions whether we accord any meaning to a defendant's Rule 12(a) duty to answer . . . It may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds. Although we are not about to inaugurate

a policy of entering irrevocable defaults where no answer has been filed by the thirty-first day, we are equally resolved that people know that the duty to answer must be taken seriously. At some point the train must leave.

*Id.* at 388-89.

¶36. In this case, Allstate has given no reason for its failure to answer the complaint within thirty days, as required by M.R.C.P. 12(a). We require the plaintiff under Rule 4 to serve the defendants within 120 days after the filing of the complaint, or show good cause for failing to do so in order to prevent dismissal of the complaint. *Rains v. Gardner*, 731 So.2d 1192, 1198 (Miss. 1999). So should the defendant be required to answer within 30 days, or at least ask for more time. If we allow default judgments to be set aside any time a defendant can show the presence of a colorable defense, regardless of good cause, we will essentially relieve defendants of their burden to answer under Rule 12(a). No one with an arguable defense would ever need to file an answer, and could then come back into court after the fact and receive a trial on the merits. How long will we allow defendants to wait before making an appearance? Six months? A year? This places an onerous burden on the plaintiff, who may then be required to file a complaint, numerous motions, and make appearances in court before the defendant is even required to file an answer to the complaint.

¶37. In addition, the majority mistakenly applies the Mississippi law regarding lienholders, instead of the New York law. The center of gravity between the parties was in New York. In Mississippi, questions of choice of law are determined by which state has the most substantial contacts with the suit. *Mitchell v. Craft*, 211 So.2d 509, 514-16 (Miss. 1968). *See also Allison v. ITE Imperial Corp.*, 928 F.2d 137, 139 (5th Cir. 1991); *Davis v. Nat'l Gypsum Co.*, 743 F.2d 1132 (5th Cir. 1984).

¶38. In *Mitchell*, we held that Mississippi courts should apply Mississippi law "unless it appears that non-forum contacts are of greater significance." 211 So. 2d at 512. In the case before us, the parties were residents of New York, and the car was found in New York City and brought to Green's repair shop in New York City where the work was performed. Because the center of gravity is in New York, New York law should apply.

¶39. Finally, Green should be able to testify to the cost of repairs. Based on his experience as the owner of the body shop, Green could testify as an expert. He is not required by the Rules of Procedure to produce the mechanics that actually performed work on the car in New York and Mississippi, or the employees of Associated Auto Carriers who moved the car from New York to Mississippi. We do not require doctors, anesthesiologists, technicians, etc. to testify to the contents of a hospital bill. Neither should we require Green to produce the mechanics and valets to testify to the contents of the invoices at issue. Rather, Green's testimony should be admitted, and Allstate allowed to rebut with its own expert. Both should be allowed so that the trier of fact can weigh their credibility and make a determination.

¶40. Therefore, I would affirm the judgment of the circuit court. Allstate has failed to show excusable neglect or other good cause for failing to answer the complaint. The majority has failed to apply the applicable statute from New York, which is the state with the greater contacts. Green's evidence as to damages was admissible, with the trier of fact to determine what weight to give it. Accordingly, I dissent.

## DIAZ AND EASLEY, JJ., JOIN THIS OPINION. MILLS, J., JOINS IN PART.

1. When asked about the lapse of time, Green testified that he was out of the country on a job in Haiti, setting up a plant there, during the intervening years.

2. No testimony was presented by Allstate during any of the proceedings in Tishomingo County Circuit Court, but an affidavit from its Litigation Specialist was attached to Allstate's Motion to Set Aside Entry of Default. The affidavit mentioned the contacts and that Allstate declared that Green's claim was unreasonable. It also stated that Green refused to disclose the location of the vehicle. Green testified in court that he talked with a judge who lived in his building who gave him advice about not showing the car to Allstate.

3. Green's Composite Exhibit No. 1 consisted of three items: a hauling bill dated 11-3-97 from Associated Auto Carriers, Long Island, NY for $945; a Tishomingo, MS repair bill (undated) for $458 damage which occurred in transit from NY; and an undated estimate on the form of R&P Automotive, Green's shop in Brooklyn, NY compiled by Rev. Burcham, the Tishomingo mechanic, based on his viewing the BMW and on Green's recollection of what was done, showing $3,400 labor and $3,327 parts.

Allstate made no objection until after all Green's testimony about all these items, when counsel opposite asked that they be marked, and the trial judge asked if Allstate had any objection. Counsel replied "Yes, we object to all of them. Hearsay is the main objection on all of them." The trial judge replied "[T]he objection will be noted. I will receive them and I'll take that into consideration in ruling." Allstate did not request a ruling at the close of the hearing, and the trial judge made no mention of it in his bench ruling.

4. The Court of Appeals has explained the procedural effect of reversing entry of a default judgment as being the "equivalent of the trial court's having originally done so." *American Cable Corp. v. Trilogy Communications, Inc.,* 754 So.2d 545, 556 (Miss Ct. App. 2000)(holding that on remand, plaintiff must prove "any contested factual underpinnings of its position").

5. (1) fraud, misrepresentation, or other misconduct of an adverse party; (2) accident or mistake; (3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; (6) any other reason justifying relief from the judgment.