# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-IA-01512-SCT

*LORI ANN STANFORD AND HUSBAND, GARRY STANFORD*

*v.*

*CHARLES RAY PARKER, M.D.*


| | |
|---|---|
| DATE OF JUDGMENT: | 8/29/2000 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN H. COCKE |
| ATTORNEYS FOR APPELLEE: | SHELBY KIRK MILAM |
| | S. DUKE GOZA |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 4/04/2002 |
| MOTION FOR REHEARING FILED: | 5/3/2002; denied 8/8/2002 |
| MANDATE ISSUED: | 8/15/2002 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. This interlocutory appeal arises from a decision in the Circuit Court of Alcorn County, Mississippi, Judge Barry W. Ford presiding, to set aside a default judgment. Lori Ann Stanford brought a claim for medical negligence against her employer, Charles Ray Parker, M.D. Garry Stanford, Lori Stanford's husband at the time suit was filed, made a claim for loss of consortium in the complaint jointly filed by the Stanfords on April 15, 1999.

¶2. According to the proof of service, Dr. Parker was served with the complaint and summons on April 16, 1999. Dr. Parker's answer was not filed with the trial court until September 5, 2000, over fourteen months after the complaint was served. A judgment by default was entered against Dr. Parker on June 24, 1999, due to his failure to plead, answer, or otherwise defend the Stanfords' complaint within thirty days, the time allowed under Rule 12 of the Mississippi Rules of Civil Procedure. The default judgment was set aside on August 29, 2000. The sole issue before this Court is whether the trial court erred in overturning the default judgment.

## FACTS

¶3. Lori Stanford was an employee of Dr. Parker. Her complaint states that she began having headaches while employed with Dr. Parker. Dr. Parker treated her headaches with Nubain injections. Lori contends that she became addicted to the Nubain and other prescriptions and injections administered by Dr. Parker.

She claims Dr. Parker's actions were grossly negligent and improper. As a result of Dr. Parker's alleged negligence, Lori underwent medical treatment at a Charter institution for her addiction, and she now seeks medical expenses and loss of income.

¶4. In consideration of the default judgment, entered on June 24, 1999, and in consideration of evidence presented on the issue of damages, the trial court entered a final judgment against Dr. Parker in the amount of $519,490.80 for compensatory damages, $250,000 in punitive damages, and $100,000 for Garry Stanford's loss of consortium claim. This order and final judgment was entered on February 10, 2000.

¶5. On June 9, 2000, Dr. Parker filed a motion to set aside the default judgment. On August 29, 2000, after a hearing on the matter was held, an order was entered setting aside the default judgment, pursuant to M.R.C.P. 60(b)(6). The Stanfords, aggrieved by the decision to set aside the default judgment, seek reversal on this interlocutory appeal.**ANALYSIS**¶6. The standard of review for setting aside a default judgment is whether the trial court committed an abuse of discretion. *McCain v. Dauzat*, 791 So. 2d 839, 842 (Miss. 2001). This Court has articulated a three-prong balancing test for trial courts to utilize in determining whether to set aside a default judgement pursuant to M.R.C.P. 60(b). *Id.* The trial court must consider: (1) the nature and legitimacy of the defendant's reasons for his default; (2) whether the defendant, in fact, has a colorable defense to the merits of the claim; and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default is set aside. *Id.* Additionally, this Court has stated that where there is reasonable doubt as to whether the default judgment should be set aside, the doubt falls in favor of opening the case for a decision on the merits. *Id.* Furthermore, this Court has "encouraged trial courts to vacate a default judgment where 'the defendant has shown that he has a meritorious defense.'" *Allstate Ins. Co. v. Green*, 794 So. 2d 170, 174 (Miss. 2001) (quoting *Bailey v. Georgia Cotton Goods Co.*, 543 So. 2d 180, 182 (Miss. 1989)). In the case sub judice, the trial court considered the prongs listed in *McCain*, although little or no consideration was given to the second prong, which was stipulated to before trial. *McCain,* 791 So. 2d at 842.

¶7. Rule 60(b) of the Mississippi Rules of Civil Procedure provides that a court may relieve a party from a final judgment for the following reasons:

> (1) fraud, misrepresentation, or other misconduct of an adverse party;
>
> (2) accident or mistake;
>
> (3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
>
> (6) any other reason justifying relief from the judgment.

M.R.C.P 60(b). The chancellor ruled that under Rule 60(b)(6), Dr. Parker was entitled to have the default judgment set aside. This Court has held that relief under Rule 60(b)(6) "is reserved for exceptional and compelling circumstances." *Bryant v. Walters*, 493 So. 2d 933, 939,(Miss. 1986). In *Walters*, this Court

reversed a decision by the lower court to set aside a default judgment. *Id.* The appellee "never reached the edge of this 'grand reservoir [of equitable power],'" a term used to describe circumstances that would justify setting aside a default judgment under clause 6. *Id.* (quoting, Moore's Federal Practice, Vol. 1, § 60.27.)

## I. THE NATURE AND LEGITIMACY OF THE DEFENDANT'S REASONS FOR HIS DEFAULT.

¶8. Dr. Parker was served with process on April 16, 1999. The complaint was forwarded to Dr. Parker's attorney four days later, on April 20, 1999. Over fourteen months later, on September 5, 2000, Dr. Parker filed an answer to the complaint. This Court has held that even when an answer is only four days overdue, that is sufficient for a trial court to deny a motion to set aside a default judgment. *Bailey*, 543 So. 2d at 182. However, *Bailey*, as noted by the dissent, was decided on the second prong because the defendant failed to present a defense on the merits.

¶9. This prong weighs heavily in favor of the Stanfords. Dr. Parker has not set forth any reason why he failed to answer the Stanfords' complaint. The trial judge stated that Dr. Parker had failed to show good cause for failing to answer the complaint. The record and Dr. Parker's brief are also devoid of any legitimate reason for failing to file a timely answer, with the exception of merely stating that it was simple inadvertence, mistake of counsel, and failure to follow up with the investigation of Dr. Parker's case. This prong falls in favor of the Stanfords.

## II. WHETHER THE DEFENDANT IN FACT HAS A COLORABLEDEFENSE TO THE MERITS OF THE CLAIM.

¶10. Dr. Parker argues that a colorable defense exists in this case and that, in light of contested material, a consideration of the case on its merits is required. It was undisputed that Dr. Parker did present a colorable defense, as this was stipulated to before the trial court. Since the plaintiff stipulated that there was a colorable defense, the circuit judge, in his ruling, did not consider the merits or likelihood of success of Dr. Parker's defense. However, in support of his motion to set aside the default judgment, Dr. Parker submitted an affidavit, which he signed on June 6, 2000. In his affidavit, Dr. Parker states that he only recalled prescribing Nubain to Lori on one occasion, in November 1996. He states that notations as to Nubain prescriptions in Lori's file are not in his handwriting. He also stated that, in 1997, he discovered, through his office staff, that Lori was removing pain medication and other controlled substances from his office without his express or implied permission.

¶11. Additionally, Dr. Parker submitted medical records with his motion to set aside the default judgment. These records suggest that Lori received Nubain on October 26, 1996; November 4, 1996; November 10, 1996; and various dates in January and February 1997. The records also suggest that Lori had perhaps developed an addiction to the Nubain.

¶12. Dr. Parker also submitted an affidavit by Robert Upchurch, a licensed attorney in Tupelo, Mississippi. Upchurch stated that, in his opinion, the Stanfords would be required to produce expert medical testimony before a prima facie claim of medial negligence can be satisfied. However, w conclude that merely stating that the Stanfords would be required to produce expert medical testimony does not create any substantial merit to Dr. Parker's defense. If discovery had ensued, there is no reason to believe that the Stanfords could not have produced the required expert medical testimony.

¶13. Although the Stanfords conceded that there was a colorable defense, they did not concede that Dr. Parker's defense would be a winning defense or a defense with any likelihood of success on the merits. On the contrary, the Stanfords argue that Dr. Parker's defense was not credible. They argue that the mere fact that there may be a defense to the claim is not sufficient reason to set it aside. This Court has found that the resolution of a factual issue in favor of one party over another, which would negate liability, is not enough to disturb the trial court's decision in ordering a default judgment. *Pointer v. Huffman*, 509 So. 2d 870, 876 (Miss. 1987).

¶14. In *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987), this Court affirmed a trial court's refusal to set aside a default judgement. The Court found that even though the defendant "made a substantial showing at the hearing below that he did in fact have a colorable defense on the merits," the lengthy delay in answering without good excuse and the substantial prejudice to the plaintiff outweighed the defendant's colorable defense. *Id.*

¶15. Additionally, in *Griffin* this Court recognized that it had previously rejected efforts to avoid a default judgment "where the named defendant showed a far greater likelihood of success on the merits." *H & W Transfer & Cartage Serv., Inc. v. Griffin*, 511 So. 2d 895, 899 (Miss. 1987). In the case sub judice, the circuit court recognized that "even taking into consideration that there is a colorable defense, that in and of itself would not be sufficient for this Court to set aside the default judgment in this case."

¶16. The fact that Dr. Parker may have a colorable defense should not, in and of itself, give him an easy way out of the default judgment against him. The Stanfords argue that because Dr. Parker's colorable defense is based primarily on his own affidavit, his defense basically boils down to a mere denial. Nevertheless, the medical records and disputed notations, including Dr. Kerby's concern that the number of refills on her last prescription was erroneous, could be viewed as support for Dr. Parker's defense. This prong weighs in favor of Dr. Parker.

### III. THE NATURE AND EXTENT OF PREJUDICE WHICH MAY BE SUFFERED BYTHE PLAINTIFF IF THE DEFAULT IS SET ASIDE.

¶17. The Stanfords contend that a delay as long as the one in this case is ipso facto prejudicial to them. To support this contention, the Stanfords argue that in *Pittman* this Court stated that the key inquiry in determining whether a plaintiff has suffered prejudice by the setting aside of the default judgment is the passage of time. *Pittman*, 501 So. 2d at 388.

¶18. Dr. Parker distinguishes *Pittman* by asserting that, in *Pittman*, postponement of a trial for a year in the case of a motor vehicle accident, which turned on the fading memories of a split second event, substantially prejudiced the party seeking default. *Id.* at 388. Dr. Parker argues that the facts surrounding the instant medical negligence claim would not be subject to loss of memory because the incidents between Dr. Parker and Lori occurred over the course of Lori's employment with Dr. Parker.

¶19. The Court in *Pittman* noted that the duty to answer should be taken seriously. The Court stated that "[i]t may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds." *Id*. According to the Stanfords, the delay in answering the complaint in this case is longer than in any other case that has come before this Court. Due to the financial and emotional distress suffered by the Stanfords, as well as the great length of time that passed before Dr. Parker answered the complaint, it is the opinion of this Court that the Stanfords suffered substantial prejudice.

## CONCLUSION

¶20. The circuit court stated that Mississippi does not favor default judgments, "especially if there is any reason justifying why something may not have happened." While it is true that we do not favor default judgments, if a defendant can not raise a defense under clauses 1-5 of Rule 60(a), then an exceptional and compelling circumstance must exist to justify setting aside a default judgment under clause 6, not just any reason.

¶21. Despite the Stanfords' argument, supported by *Huffman*, that it was Dr. Parker's responsibility to check the courthouse to see if his attorney had filed papers, the circuit court ultimately concluded that Dr. Parker did everything he was required to do. *Huffman*, 509 So. 2d at 876. The circuit court distinguished *Huffman* by stating that the defendant was an insurance agent who regularly dealt with litigation and lived only a few minutes from the courthouse. *Id*. This Court will not set a more lenient standard for doctors who fail to answer complaints. The circuit court's ultimate reason for setting aside the default judgment was not a compelling reason.

¶22. There is simply not an acceptable reason as to why Dr. Parker waited over fourteen months to answer the Stanfords' complaint. Setting aside the default judgment would cause substantial prejudice to the Stanfords. Rule 60(b)(6) in the Mississippi Rules of Civil Procedure calls for an exceptional or compelling reason to set aside a default judgment in the absence of the other enumerated reasons. No such compelling reason exists in the record before this Court. Furthermore, the balancing of equities in this case clearly favors the Stanfords. For these reasons, we find that the trial judge abused his discretion in setting aside the default judgment. Therefore, we reverse the circuit court's order setting aside the default judgment, and we render judgment reinstating the default judgment against Dr. Parker.

¶23. **REVERSED AND RENDERED**.

**PITTMAN, C.J., McRAE, P.J., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. SMITH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, JJ.**

**SMITH, PRESIDING JUSTICE, DISSENTING:**

¶24. This Court has stated that default judgments are not favored and that trial courts should not be grudging in the granting of orders vacating such judgments where showings within the rules have *arguably* been made. *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 387 (Miss. 1987) (citing *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 666 (Miss. 1985)) (emphasis added). The trial court's exercise of its discretion in granting or denying a motion to set aside the default judgment may be disturbed only where it has been abused. *Pointer v. Huffman*, 509 So. 2d 870, 875 (Miss. 1987) (citing *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss.1987)). In my view, the trial court's determination to set aside the default judgment in this matter does not amount to abuse of discretion. Because the majority concludes otherwise, I respectfully dissent.

¶25. As discussed by the majority, the guidelines for determining abuse of discretion are: (1) good cause for the failure to timely answer; (2) a colorable defense to the merits of the claim; and (3) prejudice suffered by the non-offending party if the decree is set aside. *Williams v. Kilgore*, 618 So. 2d 51, 55 (Miss. 1992); *International Paper Co. v. Basila*, 460 So. 2d 1202 (Miss.1984). The record supports that the trial

court attempted a balancing of equities following these guidelines.

¶26. I agree with the trial judge and the majority that the first prong - good cause for failure to answer in a timely fashion - weighs in favor of the Stanfords. The record indicates that Dr. Parker initially acted in a manner consistent with that of a reasonable and prudent defendant by notifying his insurer of the claim against him. His insurer forwarded the complaint to defense counsel, which promptly took steps to defend Dr. Parker's interests by beginning an investigation of the claim. At this point, however, Dr. Parker dropped the ball. This Court has decided numerous cases in which defendants similarly entrusted the defense of their interests to an insurer or attorney, who, without sufficient excuse, failed to defend those interests in a timely fashion. *See **Bailey v. Georgia Cotton Goods Co.***, 543 So. 2d 180 (Miss. 1989); ***Pointer v. Huffman***, 509 So. 2d 870 (Miss. 1987); ***H&W Transfer & Cartage Serv., Inc. v. Griffin***, 511 So. 2d 895 (Miss. 1987). In each of these cases, this Court determined that the first prong weighs in favor of the non-offending party.

¶27. I disagree, however, with the majority's discussion of ***Bailey v. Georgia Cotton Goods Co.***, 543 So. 2d 180 (Miss. 1989), as that case impacts the determination under the first prong. The majority relies on ***Bailey*** for the proposition that "[t]his Court has held that even when an answer is only four days overdue, that is sufficient for a trial court to deny a motion to set aside a default judgment." (Majority ¶8). The majority fails to observe that ***Bailey*** also stated that "[i]t certainly would not have been an abuse of discretion" for the trial court to set aside a default judgment entered only three days after the deadline for answering. ***Id.*** at 181. In determining that the trial court had not abused its discretion in refusing to set aside the default judgment, the Court in ***Bailey*** relied on the fact that the defendant had entirely failed to present any defense on the merits, not merely that his answer was four days overdue. ***Id.*** at 182.

¶28. Furthermore, the majority errs in its determination that Dr. Parker has failed to present a colorable defense to the merits of Stanford's claim. *First and foremost, plaintiffs' counsel stipulated before the trial court that Dr. Parker had put forth a colorable defense*. Second, Dr. Parker has, in fact, presented a colorable defense on the merits. In addition to Dr. Parker's affidavit stating that he prescribed Nubain to Mrs. Stanford on only one occasion, that she was removing pain medication from his office without permission, and that the notations in her medical file were not in his handwriting, Dr. Parker submitted the medical records of a neurologist, Dr. Andrew Kerby, who also treated Mrs. Stanford. In these records, Dr. Kerby expresses concern that Mrs. Stanford "by omission or intention" misrepresented the date on which she last received Nubain as well as the fact that the number of refills on the label of her last prescription was erroneous.

¶29. The majority relies on ***H&W Transfer & Cartage Serv., Inc. v. Griffin***, 511 So. 2d 895 (Miss. 1987), for its determination that this Court has previously rejected efforts to avoid a default judgment 'where the named defendant showed a far greater likelihood of success on the merits.'" In ***H&W***, the only effort at establishing a colorable defense was the naked assertion of counsel, unsupported by any affidavit of the defendant setting forth the nature and substance of the defense. ***Id.*** at 899. In the case sub judice, this Court is presented with the affidavit of Dr. Parker which, in detail, sets for the nature and substance of the defense, as well as the records of Dr. Kerby.

¶30. The majority also makes much ado of the effect of the tardiness of Dr. Parker's answer on the credibility of his defense. The ultimate acceptability of Dr. Parker's defense by the finder of fact is not at issue at this point in the litigation. In my view, the majority places itself in the place of the fact finder in this

regard.

¶31. As plaintiffs' counsel stipulated before the court below, Dr. Parker has presented a colorable defense on the merits. If any one of the three factors in the balancing test outweighs the other in importance, it is this one. *Bailey*, 543 So. 2d at 182. We have encouraged trial courts to vacate a default judgment where the defendant has shown that he has a meritorious defense. *Allstate Ins. Co. v. Green*, 794 So. 2d 170 (Miss. 2001) (citing *Bailey*, 543 So. 2d at 182). "The existence of a colorable defense on the merits 'is a factor which should often be sufficient to justify vacation of a judgment entered by default.'" *Pointer*, 509 So. 2d at 876 (quoting *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d at 388). *See also Shannon v. Henson*, 499 So. 2d 758, 763 (Miss. 1986); *Bryant, Inc. v. Walters*, 493 So. 2d 933, 937 (Miss. 1986); *International Paper Co. v. Basila*, 460 So. 2d 1202, 1204 (Miss. 1984). "The importance of litigants having a trial on the merits should always be a serious consideration by a trial judge in such matters. Thus, any error made by a trial judge should be in the direction of setting aside a default judgment and proceeding with trial." *Green*, 794 So. 2d at 174 (quoting *Clark v. City of Pascagoula*, 507 So. 2d 70, 77 (Miss.1987)).

¶32. Finally, regarding the third prong, the Stanfords argue that setting aside the default judgment will cause them additional emotional and financial distress and that their claims will be damaged by the fading memories of potential witnesses. The Stanfords' claim that they have endured severe emotional and financial distress caused by Dr. Parker's delay in answering their complaint is belied by their actions. The Stanfords' assertion that they have had no income upon which to rely during the pendency of this action begs the question of why they waited nearly seven months after obtaining the default judgment against Dr. Parker to seek a damages hearing in the matter. It is also apparent from the Stanfords' brief that Mrs. Stanford's inability to work is not due to the pendency of the instant litigation, but rather her alleged injury caused by Dr. Parker. Such is a proper consideration in the award of damages, not the determination of whether the trial court abused its discretion in refusing to set aside the default judgment.

¶33. Additionally, as observed by the majority, the case relied upon by the Stanfords for their assertion that the memories of witnesses have become less acute, *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377 (Miss. 1987), involved claims arising from a motor vehicle accident, which, *Pittman* took care to note, required that witnesses recall "a split second event." There is no indication that this case requires recollection of such temporal events. To the contrary, as the contents of the record display, this is a case in which many, if not all, the events complained of by the plaintiff are recorded on paper - that is, the medical records which indicate that Dr. Parker prescribed Nubain to Mrs. Stanford. It is the defendant who supposedly will be relying on the memories of witnesses to establish his defense.

¶34. Because the third prong and, most importantly, the second prong weigh in favor of Dr. Parker, this Court should hold that the trial court did not abuse its discretion in setting aside the default judgment. For these reasons, I respectfully dissent.

**WALLER AND COBB, JJ., JOIN THIS OPINION.**