**THE SUPREME COURT OF MISSISSIPPI**

**NO. 2007-CT-00418-SCT**

*FLAGSTAR BANK, FSB*

*v.*

*CALVIN AND JAMIE DANOS, INDIVIDUALLY
AND AS GUARDIANS AND NEXT OF FRIENDS OF
LAURA MATHERNE, A MINOR, GAVIN DANOS, A
MINOR AND MARISSA DANOS, A MINOR*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2007 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CAMILLE HENICK EVANS |
| ATTORNEY FOR APPELLEE: | CATHERINE H. JACOBS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS REINSTATED AND AFFIRMED - 08/19/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Calvin and Jamie Danos, individually and as guardians and next friends of Laura

Matherne, a minor, Gavin Danos, a minor, and Marissa Danos, a minor (the Danoses), filed

a petition for writ of certiorari after the Court of Appeals reversed the Lamar County Circuit

Court's judgment entered in their favor against Flagstar Bank, FSB (Flagstar), and rendered

judgment in favor of Flagstar. Having granted certiorari, we now reverse the judgment of the Court of Appeals, and reinstate and affirm the judgment entered by the Circuit Court of Lamar County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     A full account of the factual background and procedural history of this case is set forth in ***Flagstar Bank, FSB v. Danos***,  2008 WL 5064953, **2-5, ¶¶5-14 (Miss. Ct. App. Dec 2, 2008). We set out here only those facts and the  procedural history necessary to address and decide the issues before us.

¶3.     On March 22, 2004, the Danoses filed suit against Flagstar and other defendants.[1] Flagstar was a nonresident corporation not doing business in Mississippi, and thus with no agent in the state to receive service of process. The Danoses attempted service of process by certified mail with "restricted delivery, return receipt requested" to Albert Gladner, the registered agent for Flagstar, at a post office box in Troy, Michigan. The restricted-delivery summons was signed for, returned, and filed with the Lamar County Circuit Court on July 13, 2004. The signature on the receipt was illegible. The docket entry reads: "Summons returned–certified mail as to Flagstar Bank signed for 4-15-04 by ?, filed." Attached to a subsequent pleading was a letter dated April 26, 2004, from Robert K. Fleming, the operations coordinator for Flagstar's legal department in Troy, Michigan, addressed to Catherine Jacobs, counsel for the Danoses. The letter stated: "Flagstar Bank, FSB (Flagstar)

---

[1]By mid-September 2006, all defendants except Michael Burks and Flagstar had been dismissed from this lawsuit.

2

is in receipt of the summons regarding the above referenced matter. The loan account was sold on November 16, 2001 to Chase Manhattan. You may contact them at the following address and phone number listed below." An address for Chase Manhattan Mortgage, Inc., followed. On September 11, 2006, the Danoses filed an application for entry of default as to Michael Burks, with the customary accompanying affidavit of the plaintiffs' attorney, resulting in the circuit clerk filing an entry of default on the same day. However, the Danoses never filed an application for entry of default against Flagstar due to its failure to answer the complaint; thus, there was no clerk's entry of default against Flagstar.

¶4. On September 25, 2006, the trial judge entered a default judgment against Flagstar. The judgment read as follows:

DEFAULT JUDGMENT

THIS CAUSE having come before the Court for trial on the merits, and the clerk having called the docket, and on three different occasions called the Defendant, Flagstar Bank FSB, and said Defendant failed to answer or appear, it is therefore
ORDERED and ADJUDGED that Default Judgment be and is hereby entered against the Defendant, Flagstar Bank FSB and in favor of the Plaintiffs pursuant to Rule 55(b) of the Mississippi Rules of Civil Procedure. It is further
ORDERED and ADJUDGED that the hearing on damages be and is hereby set over to September 29, 2006 at 11:00 A.M. at the Lamar County Courthouse in Purvis, Mississippi.

The hearing to assess damages was held on September 29, 2006. Flagstar was not present, nor did it have counsel present. At the conclusion of the hearing, the trial judge, on the same day, entered a judgment for damages in the amount of $500,000 against both Flagstar and Burks.

3

¶5.  On October 11, 2006, an attorney filed a notice of entry of appearance as counsel for Flagstar, and on November 15, 2006, the attorney filed a motion to set aside the default judgment and for additional relief.  Flagstar claimed that the Danoses' service on it as a nonresident corporation with no Mississippi registered agent was flawed; thus, good cause existed to set aside the judgment.  Flagstar argued that the Danoses had attempted to serve Flagstar by mailing a certified letter, restricted delivery requested, to Gladner, the registered agent for Flagstar, at a post office box in Troy, Michigan.  The chief legal counsel for Flagstar submitted an affidavit stating that the registered agent for service of process upon Flagstar was Gladner.  Flagstar's attorney swore that the return receipt attached to the summons did not bear the signature of Gladner, but instead it was signed by Romeo Pena, a mail clerk whose job was to deliver the mail and who was not an authorized agent for service of process.  Flagstar's attorney stated that he was familiar with Pena's signature. Flagstar's attorney further stated that the return receipt was marked "Restricted Delivery" for Gladner, and Pena had no authority to sign the receipt on Gladner's behalf.  Flagstar reasoned that, because it had not received valid service of process, the judgment of the Lamar County Circuit Court was void.

¶6.  Additionally, Flagstar argued that the Danoses did not follow the provisions of Mississippi Rule of Civil Procedure 55(a) in obtaining the default judgment, because they failed first to apply to the clerk for an entry of default, to support that application by affidavit or otherwise, and then to seek a default judgment from the trial court only after entry of the clerk's default.  Thus, Flagstar argued, the trial court's entry of a default judgment was faulty

4

due to its failure to follow the mandatory requirements of Rule 55. Finally, Flagstar argued that the default judgment should be set aside because the bank had a colorable defense to the merits of the Danoses' complaint.

¶7. The trial court denied the motion to set aside default judgment and in a memorandum opinion explained its reasons for previously having entered the default judgment:

> [T]he defendant failed to appear for a trial on the merits, and that on three different docket calls, the defendant had failed to appear, or make any announcements. After entry of the judgment, and consistent with M.R.C.P. 55, this Court held a hearing on damages, where the defendant also failed to appear.

The trial court found no merit in Flagstar's claim of lack of jurisdiction because of inadequate service of process, stating only that "[w]hile the defendant raises numerous other issues relating to service and prejudice, this Court deems them to be without merit." The trial court likewise found no merit in Flagstar's argument that the default judgment was void for failure to first secure the entry of the clerk's default, ruling that neither an application for default nor a clerk's entry of fault was required in this case. The trial court stated, "M.R.C.P. 55(b) expressly allows for a default to be taken if a party fails to appear at the trial. Here, the record reflects, that the defendant failed to appear at three docket calls, trial and at writ of inquiry on damages."

¶8. The trial court rejected Flagstar's contention that default judgments are not favored and should be set aside when certain factors are shown. The trial court's order stated:

> [T]his Court does not adopt the position advocated by the defendant in regards to liberally setting aside default judgments. Setting aside defaults as envisioned by the plaintiff [sic] would become merely a perfunctory request.

5

Moreover, failure to uphold default judgments would not foster the important judicial policy of finality of judgment.

The trial court did not address whether Flagstar had a colorable defense to the action.

¶9.　　Aggrieved by the trial court's denial of its motion to set aside the default judgment and judgment awarding damages, Flagstar appealed to us, and we assigned this case to the Court of Appeals.[2]

**PROCEEDINGS IN THE COURT OF APPEALS**

¶10.　　The Court of Appeals reversed the trial court's judgment denying Flagstar's motion to set aside the default judgment, and rendered judgment in favor of Flagstar for lack of jurisdiction.  A majority of the Court of Appeals found that, because Flagstar was an out-of-state corporation, Mississippi Rule of Civil Procedure 4(d)(4)[3] was to be followed.  Citing *Brown v. Bristol-Myers Squibb Co.,* 2002 U.S. Dist. LEXIS 27445, *8-12 (S.D. Miss. 2002), the majority noted: "If service is attempted by certified mail upon a corporation under Rule 4(c)(5), but is delivered to a person not designated to receive process under Rule 4(d)(4), then the process fails."  Thus, the majority found that, because the Danoses did not make an

---

[2]Michael Burks did not appeal from the trial court's judgment entered against him; therefore, the only parties to today's appeal are Flagstar and the Danoses.

[3]Rule 4(d)(4) provides in pertinent part:

Service by sheriff or process server shall be made as follows:

. . . (4) Upon a . . . foreign corporation . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

affirmative showing that the mailroom clerk who signed for the summons was in fact the registered agent for service of process for Flagstar, the service of process was void.

¶11. The dissent disagreed, opining that the Court of Appeals' majority had misconstrued Mississippi Rules of Civil Procedure 4(c)(5) and 4(d)(4). Based on the dissent's interpretation of Rule 4(c)(5), process was deemed complete when the certified letter was signed for and picked up by the mailroom clerk. The dissent reasoned that Rule 4(c)(5) does not address whether someone other than the registered agent for service of process for a corporation may sign for a certified letter addressed to the registered agent. According to the dissent, because Flagstar is not a natural person, the Danoses were not required, under Rule 4(c)(5), to mark the envelope for restricted delivery. Therefore, the fact that the mailroom clerk signed for the certified letter, which was marked restricted delivery to Gladner, was inconsequential to the effectiveness of the process on Flagstar. Finally, the dissent found that Rule 4(c)(5) required only that the certified letter be properly addressed to Flagstar's registered agent for service of process, who was Gladner. *Flagstar*, 2008 WL 5064953, **10-12, ¶¶32-37 (Irving, J., dissenting).

¶12. Aggrieved by the Court of Appeals' judgment, the Danoses filed a motion for rehearing, which the Court of Appeals denied; therefore, the Danoses filed a Petition for Writ of Certiorari, which we granted on June 11, 2009. After reviewing the record, this Court, by order entered on December 3, 2009, directed the parties to supplement the record with the transcript of the March 12, 2007, hearing concerning the entry of the default judgment against Flagstar. Likewise, the Court permitted the parties to file simultaneous supplemental

7

briefs, if desired, and the parties thereafter submitted supplemental briefs. However, concerning the purported transcript of the March 12, 2007, hearing, Rhonda Wetzel, the court reporter, provided a letter to this Court stating that the hearing in question had been conducted in Judge Prichard's chambers and was off the record. On December 28, 2009, Flagstar filed a motion to deem the appellate record complete.

## DISCUSSION

### I. WHETHER SERVICE OF PROCESS WAS EFFECTED ON FLAGSTAR.

¶13. The critical issue addressed by the Court of Appeals was whether the plaintiffs sufficiently complied with Rule 4(c)(5) so as to effect service of process on the defendant Flagstar.[4] The majority of the Court of Appeals answered this question in the negative, adversely to the plaintiffs. The majority based its decision on its finding that the person who signed for the summons was not Gladner, but a mail clerk, whose authority to receive the

---

[4]Rule 4(c)(5) provides:

*Service by Certified Mail on Person Outside State.*

In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, the envelope containing the summons and complaint shall be marked "restricted delivery." Service by this method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked "Refused."

Miss. R. Civ. P. 4(c)(5).

8

summons on behalf of Flagstar was not established to be in compliance with the mandate of Rule 4(d)(4). Respectfully, we think otherwise, and find Rule 4(d)(4) to be inapplicable on these facts.

¶14.   The comment to Rule 4(c)(5) states:

> The Rule 4(c)(5) procedure supplants the circuitous procedures available to obtain in personam jurisdiction against nonresidents. E.g. Miss. Code Ann. 13-3-63 (1972). However, the criteria for subjecting nonresidents to the jurisdiction of Mississippi courts are those established by the legislature.

¶15.   Because Flagstar is a foreign corporation not doing business in the state, and thus has no registered agent in the state, Mississippi Code Section 13-3-57, Mississippi's Long-Arm Statute, controls for purposes of jurisdictional intent. Miss. Code. Ann. § 13-3-57 (Rev. 2002). However, the statute is silent with regard to service of process, in that it provides, "Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure." *Id.*

¶16.   As the Court of Appeals' dissent pointed out, Rule 4(c)(5) is silent with regard to whether someone other than the registered agent for service of process for a corporation may sign for a certified letter addressed to the registered agent. So too are the statutes. What is clear, however, from the standpoint of the efficacy of service of process on a foreign corporation by way of certified letter, is that the letter must be properly addressed to the person authorized to receive process on behalf of the corporation and actually delivered to that address. That was done in this case, as it is clear from the record that the letter was properly addressed and that it reached its destination. *Cf. Pointer v. Huffman*, 509 So. 2d

9

870, 873 (Miss. 1987) (after discussion on issue of whether constable had authority under statute to serve process in name of sheriff, "[t]here being no dispute as to the fact of service and notice to the defendant . . . . , this Court finds no reversible error in the trial judge's [holding that service of process was valid]"). In today's case, Robert K. Fleming, the operations coordinator for Flagstar's legal department, admitted to having received the process.

¶17. Further, we agree with the Court of Appeals' dissent that the Danoses' attempted service on Flagstar with "restricted delivery" does not in-and-of-itself render the attempted service invalid. This is a requirement born out of Mississippi Code Section 13-3-63, which governs service of process on nonresident motorists. Miss. Code Ann. § 13-3-63 (Rev. 2002). The Danoses were not required to send the letter restricted delivery; the fact that they went the extra step should not be viewed as noncompliance with Rule 4(c)(5).

¶18. For the reasons stated, based on the facts revealed in today's record, we find that service of process was proper in this matter. To hold otherwise would work an illogical burden on plaintiffs who have no control over a corporate defendant's internal operating procedures, such as how mail rooms are run.

¶19. Because the Court of Appeals found that the default judgment must be set aside due to the trial court's lack of jurisdiction to enter the judgment because of defective process, the Court of Appeals, understandably, did not address the three-prong balancing test grounded in our law to determine the propriety of the trial court's refusal to set aside the default judgment. We thus turn now to this issue.

10

## II.   WHETHER THE TRIAL COURT ERRED IN DENYING FLAGSTAR'S MOTION TO SET ASIDE THE DEFAULT JUDGMENT.

¶20.   Flagstar appropriately filed a motion to set aside default judgment pursuant to Mississippi Rule of Civil Procedure 60(b).   Without doubt, Mississippi Rule of Civil Procedure 55(c) is available to seek relief from a clerk's entry of default, while Rule 60(b) is reserved for those occasions when a party seeks relief from the trial court's entry of a judgment by default. ***American States Ins. Co. v. Rogillio***, 10 So. 3d 463, 467 (Miss. 2009). Here, at least as to Flagstar, the circuit clerk entered no default, but instead, the trial court entered a default judgment pursuant to Mississippi Rule of Civil Procedure  55(b).

¶21.   Mississippi Rule of Civil Procedure 60(b) states in pertinent part:

> **(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) fraud, misrepresentation, or other misconduct of an adverse party;
>> (2) accident or mistake;
>> (3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>> (4) the judgment is void;
>> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
>> (6) any other reason justifying relief from the judgment.

Miss. R. Civ. P. 60(b).

11

¶22. Although Flagstar does not specify what subsection of Rule 60(b) applies to justify granting relief from the judgment entered against it, much of Flagstar's focus throughout the life of this case has been on whether it was effectively served with process. Such an assertion would justify relief from the judgment pursuant to Rule 60(b)(4). Additionally, Rule 60(b)(6) is always available for an aggrieved party to seek relief from a judgment. This Court has stated that "Rule 60(b)(6) 'stands as a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is uncertain that one or more of the preceding clauses afford relief.'" *Porter v. Porter*, 23 So. 3d 438, 450 (Miss. 2009) (quoting *Briney v. United States Fid. & Guar. Co.*, 714 So. 2d 962, 969 (Miss. 1998)) (citations omitted).

¶23. Thus, in today's appeal, Flagstar argues that the trial court erred when it failed to apply properly the three-prong balancing test in ruling on Flagstar's Rule 60(b) motion to set aside default judgment. In *Rogillio*, this Court reiterated the equitable factors to be considered by the trial courts in determining whether a default judgment should be set aside. Those three factors are:

> (1) the nature and legitimacy of the defendant's reasons for his default, i.e., whether the defendant has good cause for default, (2) whether [the] defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside.

*Rogillio*, 10 So. 3d at 468 (citing *H & W Transfer & Cartage Serv., Inc. v. Griffin*, 511 So. 2d 895, 898 (Miss. 1987)). *See also Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987).

12

¶24.    Flagstar's motion to set aside the default judgment is thirty pages in length, including exhibits.  The first eleven pages of the motion are devoted to addressing the specific reasons to support Flagstar's motion as they relate to the three-prong balancing test.  In the motion, Flagstar focuses its attention on the good-cause and colorable-defense factors.  We recite here portions of the trial judge's memorandum opinion and order denying Flagstar's motion to set aside default judgment:

> On September 21, 2006, this Court entered a Default Judgment against the defendant, pursuant to M.R.C.P. 55(b).[5] The basis for the Judgment was that the defendant failed to appear for a trial on the merits, and that on three different docket calls, the defendant had failed to appear, or make any announcements.[6] After entry of the judgment, and consistent with M.R.C.P. 55, this Court held a hearing on damages, where the defendant also failed to appear.
>
> . . .
>
> The crux of the defendant's argument is that good cause exists to set aside and that a clerk's entry of default is required.  While the defendant raises numerous

---

[5]Although the default judgment was dated September 21, 2006, the actual date of entry of the default judgment was September 25, 2006.

[6]The docket reflects, *inter alia*, the following filings (and these documents likewise appear in the record before us): February 10, 2005, Notice of Cases on Trial Calendar, stating the trial docket (including this case) would be set on March 14, 2005, at 8:00 a.m.; March 25, 2005, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial at 9:00 a.m. on September 14, 2005, and that announcements could be made at docket call on September 12, 2005, at 9:00 a.m.;  September 19, 2005, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial  at 9:00 a.m. on March 22, 2006, and that announcements could be made at docket call on March 13, 2006; March 27, 2006, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial  at 9:00 a.m. on June 20, 2006, and that announcements could be made at docket call on June 12, 2006;  June 24, 2006, Order Granting Motion for Continuance and setting trial for September 19, 2006, at 9:00 a.m.; and July 14, 2006, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial at 9:00 a.m. on September 19, 2006, and that announcements could be made at docket call on September 11, 2006.

13

other issues relating to service and prejudice, this Court deems them to be without merit.

. . .

In *Hartford v. Underwriters Insurance Co. v. Williams* [sic],[7] the Mississippi Supreme Court held that a defendant seeking relief under Rule 60(b)(6) must prove good cause, a colorable defense, and that setting aside will not prejudice the plaintiff.

The defendant's chief argument regarding good cause is that the record is void as to any entry of default. However, as cited by the plaintiff in their response, M.R.C.P. 55(b) expressly allows for a default to be taken if a party fails to appear at the trial. Here, the record reflects, that the defendant failed to appear at three docket calls, trial and at the writ of inquiry on damages. In addition, the official comments to Rule 55, while [sic] read as follows, "when a defaulting party has failed to appear, thereby manifesting no intention to defend, he is not entitled to notice of the application for a default judgment under this rule." *See, Official Comments to M.R.C.P. 55(b).* Thus, it is clear that neither an application or a clerk's entry of default was needed in light of the facts.

¶25.    Additionally, in his Memorandum Opinion and Order, the trial judge discussed the fact that, pursuant to Mississippi Rule of Civil Procedure 55(b), he had authority to enter a default judgment once a defendant failed to appear on the trial date. The trial judge also acknowledged Flagstar's argument that Mississippi law does not favor default judgments and that trial courts should liberally set aside default judgments upon request. In response to that argument, the trial judge opined that such an approach of setting aside a default judgment simply upon request would be "perfunctory," eliminating the necessity for performing the three-part balancing test set out by this Court, and that there existed an important judicial policy concerning finality of judgment.

---

[7]It appears that the trial court was referring to ***Hartford Underwriters Insurance Co. v. Williams***, 936 So. 2d 888 (Miss. 2006).

14

¶26.    In ***Rogillio***, the trial court found that the default judgment had been entered properly. ***Rogillio***, 10 So. 3d at 466.  The basis for this conclusion, however, was that "the failure of the defendant to respond to the complaint was not due to accident or mistake, nor any conduct of the plaintiff or plaintiff's counsel, but to poor business practices of the defendant and complete inattention to the complaint." ***Id.***  Thus, as the trial court stated, "[t]he court finds there is no showing of good cause." ***Id.***  Therefore, in ***Rogillio***, the trial court apparently considered only the "good cause" prong in deciding to deny the defendant's motion to set aside the default judgment.

¶27.    Notwithstanding the trial court's apparent failure to apply the proper test in ***Rogillio***, however, this Court thus engaged in its own three-prong balancing inquiry on appeal.  We stated that "[i]n deciding whether to set aside a default judgment, *the trial court must consider* [the three-prong balancing test]." ***Rogillio***, 10 So. 3d at 468.  Just before that, however, and in the same breath, we explained that "*this Court* applies a three-prong balancing test when determining whether a trial court properly decided a motion to set aside a default judgment." ***Rogillio***, 10 So. 3d at 467-68 (emphasis added).  Hence, we employed the test in ***Rogillio*** and found that the trial court had not abused its discretion in denying the defendant's motion to set aside the default judgment. ***Id.*** at 476-77.[8]

_____

[8]This Court reviews a trial court's decision regarding a motion to set aside a default judgment for an abuse of discretion. ***Rogillio***, 10 So. 3d at 467 (citing ***Guar. Nat'l Ins. Co. v. Pittman***, 501 So. 2d 377, 388 (Miss. 1987)).

15

¶28.    **Rogillio** thus stands for the proposition that the trial court must employ the three-part balancing test when deciding whether to set aside a default judgment, and this Court must strike the same balance when determining whether the trial court abused its discretion in making that decision. While we are satisfied from the totality of the record, including the trial judge's memorandum opinion and order, that the trial judge applied the required three-prong balancing test, we will conduct the **Rogillio** analysis ourselves to determine if the trial court abused its discretion in denying Flagstar's motion to set aside the default judgment.

¶29.    The **Rogillio** test includes a "good-cause" prong, a "colorable-defense" prong, and a "prejudice" prong. *Id.* at 468 (citing **H & W Transfer**, 511 So. 2d at 898). The trial court's order stated the correct test as follows: "a defendant seeking relief under Rule 60(b)(6) must prove good cause, a colorable defense, and that setting aside will not prejudice the plaintiff."

### A.  Good Cause

¶30.    The trial court's memorandum opinion and order in today's case pointed out that "the crux of the defendant's argument is that good cause exists *to set aside*." (Emphasis added.) Thereafter, the trial court's order engaged in a substantial analysis regarding the "good-cause" prong and found Flagstar's arguments to be without merit. The "good-cause" prong, however, does not pertain to "good cause" to set aside the default judgment. Rather, the "good-cause" prong refers to whether the defendant can show "good cause" for its default. **Rogillio**, 10 So. 3d at 468. Flagstar never presented facts in its Motion to Set Aside specific to its reasons for default. The only facts Flagstar presented to the trial judge pertained to "good cause" *to set aside* the default judgment.

16

¶31. We note that in Flagstar's Motion to Set Aside, its principal reasons for "good cause" *to set aside* were (1) that service of process was ineffective, and (2) that the default judgment was void because the Danoses had failed to apply for an entry of default. However, the only argument presented by Flagstar that could apply toward "good cause" for the *default* was that service of process was improper. We addressed that argument in Issue I and found service of process was effected on Flagstar. *See supra* Issue I. Thus, this prong weighs in favor of the Danoses.

### B. Colorable Defense

¶32. A trial court confronted with a motion to set aside a default judgment likewise must consider whether the defaulting defendant has a colorable defense to the merits of the plaintiff's claim. *Rogillio*, 10 So. 3d at 469. Admittedly, this Court has held that the "colorable-defense" prong is the most important factor. With regard to that prong, we have held that "[i]f any one of the three factors in the balancing test outweighs the other in importance, this is the one." *Rogillio*, 10 So. 3d at 469-70 (citing *Bailey v. Ga. Cotton Goods*, 543 So. 2d 180, 182 (Miss. 1989)); *see also* *Stanford v. Parker*, 822 So. 2d 886, 888 (Miss. 2002) (quoting *Allstate Ins. Co. v. Green*, 794 So. 2d 170, 174 (Miss. 2001) (stating that this Court has "encouraged trial courts to vacate a default judgment where 'the defendant has shown that he has a meritorious defense'")).

¶33. Flagstar made several principal arguments regarding "colorable defenses" in its motion to set aside the default judgment. First, Flagstar argued that service of process was deficient. The trial court's order denying the motion states that "the defendant raises

17

numerous other issues relating to *service* . . . [but] this Court deems them to be without merit." (Emphasis added). Thus, it could be said that the trial court considered the "colorable-defense" prong, insofar as defective service of process is a "colorable defense," but found Flagstar's arguments thereunder to be lacking.

¶34. However, Flagstar also argued as a "colorable defense" that it could not be held liable, as a matter of law, for the injuries complained of by the Danoses. A short explanation of the background facts is required to understand this contention. The Danoses' complaint asserted liability based on the fact that several agents of the defendant mortgage holders had "submitted false and erroneous information to their principles [sic]" and thus to the Danoses, the consumers. The complaint alleged, *inter alia*, that Chris Shirley and Amerigo Mortgage were agents of Flagstar. To be liable for the acts of a disclosed principal, the agent must have acted outside the scope of his agency and would incur no individual liability absent fraud or other equivalent conduct. ***Rosson v. McFarland***, 962 So. 2d 1279, 1288 (Miss. 2007); *see also* ***Harrison v. Chandler-Sampson, Co., Inc.***, 891 So. 2d 224, 227-31 (Miss. 2005). However, the trial court granted summary judgment to Shirley, finding that no genuine issues of material fact existed as to his liability.[9] Thus, Flagstar's agent, who provided the sole basis for its alleged vicarious liability, was dismissed from the case. Since there is a valid argument that no agency relationship existed between Flagstar and the other defendants in the case that would have served as the basis for vicarious liability otherwise,

---

[9]The order granting summary judgment to Shirley was included as an exhibit in Flagstar's motion to set aside the default judgment.

this certainly could be deemed to be a "colorable defense" to the Danoses' claims against

Flagstar.[10] Thus, this prong would appear to weigh in favor of Flagstar.

¶35.    However, notwithstanding our finding on this factor, we note that this Court addressed

the availability of a colorable defense in *Pointer v. Huffman*, 509 So. 2d 870, 874 (Miss.

1987), and stated:

> Pointer also testified concerning his defense to Huffman's claim.    The
> existence of a colorable defense on the merits "is a factor which should often
> be sufficient to justify vacation of a judgment entered by default." *Guaranty*
> *National Ins. Co. v. Pittman*, 501 So. 2d at 388 . . . .

. . .

> The gist of Huffman's claim is the failure of Pointer to include worker's
> compensation coverage in an insurance package.   However, the testimony of
> Pointer indicates there is an important factual issue which goes to the very
> heart of Huffman's claim. Mr. Pointer's testimony indicates a colorable
> defense in that Huffman voluntarily chose not to include worker's
> compensation insurance within his insurance package.  The resolution of that
> factual issue in favor of Pointer would negate the presence of any basis of
> liability.

> To be sure, [Pointer] could have been more diligent in his actions to defend
> this suit.  The trial court, in the exercise of his discretion, so held, and this
> Court finds no abuse of this discretion.

*Pointer*, 509 So. 2d at 876.

### C.  Prejudice

---

[10]Flagstar also argued in its motion to set aside the default judgment that it did not
hold the mortgage on the home, which is the basis of this suit, when the allegedly fraudulent
acts leading to the lawsuit occurred.  If this is true, then it would appear that Flagstar cannot
be held liable to Danos under the note.  This undoubtedly would be a "colorable defense"
to the Danoses' claim, and certainly would be a factor to have been considered by the trial
court.

¶36. Lastly, when confronted with a motion to set aside a default judgment, the trial court must consider and balance any prejudice the plaintiff would suffer if the default was set aside. *Rogillio*, 10 So. 3d at 468. Here, the trial court's order stated that the "defendant raises numerous other issues relating to . . . prejudice [but] this Court deems them to be without merit." In the introductory paragraph of his Memorandum Opinion and Order, the trial judge stated that he had "reviewed the motion [to set aside default judgment], memorandums [sic] in support, exhibits, as well as conducted a hearing." Thus, it is readily apparent from this language that, prior to issuing his ruling, the trial judge had considered, *inter alia*, Flagstar's motion to set aside default judgment with the attached exhibits, and the Danoses' response to the motion, with exhibits attached to the response. Although the trial court did not specifically discuss the "prejudice" prong in its order, the Danoses did present facts in their response to Flagstar's motion to set aside indicating that they would suffer prejudice if the default judgment were set aside. Specifically, the Danoses argued that, due to their "substantial discovery, lengthy investigations, and many motions," substantial prejudice would result if "they are forced to once again engage in lengthy and costly discovery to prepare this case for trial." Additionally, the trial court, in its memorandum opinion and order, stated that "[i]t is also important to note, that [t]his case is approximately three years old." The trial court also stated that it saw no need to set out a lengthy factual recitation "[g]iven the exhaustive factual background detailed in the Court's Memorandum Opinion and Order, on Allstate's Motion for Summary Judgment."

20

¶37. In sum, notwithstanding the attention appropriately devoted to the colorable-defense assertion in any case concerning issues of setting aside default judgments, in the end, of significant import, based on the facts and circumstances peculiar to the particular case before us today, is the following: As early in the life of this civil proceeding as April 22, 2004, Flagstar's legal department operations coordinator mailed a letter addressed to the Danoses' counsel stating, *inter alia*, "***Flagstar Bank, FSB (Flagstar) is in receipt of the summons regarding the above referenced matter***." (Emphasis added). This unequivocal admission by Flagstar meant that it had received the summons with the following caveat:

**NOTICE TO DEFENDANT**

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.
Within thirty (30) days from the date of receipt of this Summons and Complaint, you are required to mail or hand deliver a copy of a written answer either admitting or denying each allegation in the Complaint to CATHERINE H. JACOBS, ATTORNEY AT LAW, 425 PORTER AVENUE, OCEAN SPRINGS, MS 39564.

You must also file the original of your answers with the Clerk of the Circuit Court within a reasonable time thereafter.

¶38. The facts of this case are similar to those found in ***Guaranty National Insurance Company v. Pittman***, 501 So. 2d 377 (Miss. 1987), wherein this Court affirmed the trial court's denial of a motion to set aside a $400,000 default judgment entered after a hearing to assess damages in a case involving an unliquidated claim for damages incurred by the plaintiff due to an automobile accident. In so doing, this Court opined that "[a]ssuming that [the defendant] could count to thirty and had some rudimentary familiarity with the Julian

21

calendar, the summons instructed him that his answer was due on December 12, 1984." *Id.* at 386-87. Thus, we are satisfied in today's case that the operations coordinator in Flagstar's legal department, through simple arithmetic, easily could have calculated that, in order to protect Flagstar's interests in this litigation commenced by the Danoses by assuring that a default judgment would not be entered against it, regardless of Flagstar's opinion as to the merits of the Danoses' assertions against Flagstar, responsive pleadings were required to be filed by May 22, 2004. Instead, the record reveals that Flagstar, throughout the history of this litigation, rolled the dice on its claim that the Danoses had failed to effect legal process upon it such that a lawful judgment could not be entered against it. *See Sartain v. White*, 588 So. 2d 204, 208 (Miss. 1991).

¶39. Likewise, we find applicable to today's case that, although the Court, in *Pittman*, found the defendant had made a substantial showing that the defendant had a colorable defense on the merits of the plaintiff's claim, this Court stated:

> In the final analysis, this case presents the questions whether we accord any meaning to a defendant's Rule 12(a) duty to answer a final judgment entered after the defendant had been fully advised of his peril. It may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds. Although we are not about to inaugurate a policy of entering irrevocable defaults where no answer has been filed by the thirty-first day, we are equally resolved that people know that the duty to answer must be taken seriously. At some point the train must leave. That point had been reached in the case at bar on February 6, 1985.[11]

*Pittman*, 501 So. 2d at 388-89.

---

[11]This was the date of the trial court's entry of a default judgment as to liability and final judgment awarding damages after a hearing to assess damages.

22

¶40. In today's case, Flagstar's train left the station on September 29, 2006, the date the trial court entered the judgment against Flagstar in the amount of $500,000.

¶41. Simply put, it is not the duty of the members of this Court to determine what decision we would have made had we been the trial judges in this case. Instead, as already noted, our solemn responsibility is to review the trial judge's refusal to set aside the default judgment in this case by considering the record before us and applying the abuse-of-discretion standard of review. Having done so, we are unable to fairly conclude that the trial court exceeded its authority or abused its discretion in refusing to set aside the default judgment entered against Flagstar.

¶42. Finally, in briefly addressing Justice Pierce's separate opinion wherein he suggests in ¶69 that we remand for a determination of damages based on an apportionment of fault between Flagstar and Michael Burks under Mississippi Code Section 85-5-7 (Rev. 1999), we note that the record does not reveal that Flagstar ever presented this issue to the trial court. Thus, we need not consider this issue, which has been raised for the first time on appeal. *Alexander v. Daniel*, 904 So. 2d 172, 183 (Miss. 2005) (citing *Triplett v. Mayor & Alderman of Vicksburg*, 758 So. 2d 399, 401 (Miss. 2000)).

## CONCLUSION

¶43. For the reasons discussed, we find that the trial court did not abuse its discretion in refusing to set aside the default judgment. Therefore, the judgment of the Court of Appeals is reversed, and the Lamar County Circuit Court's order denying the motion to set aside default judgment filed by Flagstar Bank, FSB, is reinstated and affirmed.

23

¶44. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS REINSTATED AND AFFIRMED.**

**GRAVES, P.J., AND KITCHENS, J., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J. DICKINSON AND PIERCE, JJ., JOIN IN PART. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. PIERCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J. CHANDLER, J., NOT PARTICIPATING.**

**RANDOLPH, JUSTICE, CONCURS IN PART AND IN RESULT:**

¶45. I concur in part and in result.

¶46. Mississippi Rule of Civil Procedure 4(c)(3)(A) provides:

A summons . . . may be served upon a defendant of any class referred to in paragraph . . . (4) of subdivision (d) of the rule by mailing a copy of the summons . . . to the person to be served. . . .

¶47. Mississippi Rule of Civil Procedure 4(d)(4) requires "delivery of a copy of the summons . . . to an . . . agent authorized by appointment . . . to receive service of process."

¶48. I would add to the plurality opinion only that the summons and complaint must be properly addressed to the person authorized to receive process on behalf of the corporation and actually delivered to that person at that address. The defendant confirmed that the requirements were met.

**LAMAR, J., JOINS THIS OPINION. DICKINSON AND PIERCE, JJ., JOIN THIS OPINION IN PART.**

**DICKINSON, JUSTICE, DISSENTING:**

¶49. The plurality of justices' analysis of the service-of-process issue ("Plurality") incorrectly finds service of process on Flagstar was proper. Importantly, the Plurality makes

24

no finding that the mail clerk, Pena, was authorized to accept process for Flagstar. But because "Robert K. Fleming – the operations coordinator for Flagstar's legal department – admitted to having received the process" from some source, the Plurality finds it was perfected.

¶50.    This is contrary to this Court's decision in **Hyde Construction Co. v. Elton Murphy-Walter Travis, Inc.**,[12] wherein process was served on Carter, an employee of a corporation who, in turn, delivered it to the president. This Court held:

> The delivery of the process to Carter for delivery to Hyde was not personal service on the corporation. . . . The fact that process was delivered to the president later the same afternoon did not make the service personal. Hyde's knowledge was without avail. Without service in the manner provided by law, it is ineffectual.[13]

¶51.    For the past half-century, **Hyde** – which was not cited by the Plurality – has been good law.

¶52.    I also dissent to the following holding from the Plurality:

> What is clear, however, from the standpoint of the efficacy of service of process on a foreign corporation by way of certified letter, is that the letter must be properly addressed to the person authorized to receive process on behalf of the corporation and actually delivered <u>to that address</u>.[14]

---

[12] **Hyde Constr. Co. v. Elton Murphy-Walter Travis, Inc**. 227 Miss. 615, 86 So. 2d 455 (Miss. 1956).

[13] **Id**. at 458.

[14] Plur. Op. at ¶ 16. The Plurality understandably cites no authority for its new two-prong test, and the second prong – which simply allows the process to be delivered to "that address," rather than an actual person authorized to receive it – is not to be found in the law.

25

(Emphasis added.)

¶53. So according to the Plurality, valid service of process may be obtained on a foreign corporation, even in a case where the undisputed facts establish that the process never reached any person authorized to receive it and no person associated with the defendant was aware of the lawsuit. Indeed, according to the plurality's view of "efficacy of service of process," all that is necessary is that process be properly addressed and delivered to the building, or anyone who happened to be in or around it. The Plurality fails to consider that most corporations are small businesses, and many (such as small farms) are operated out of a home. Thus, under today's Plurality opinion, process may be perfected by delivery to a landscaper found watering plants at the address of the defendant. Also, according to the Plurality's holding as recited above, so long as the postman (or postwoman) drops the process in the correct mailbox, or hands it to a customer seated in the defendant's waiting room, the defendant is properly served – even though for a variety of reasons the process may never be seen by anyone authorized to receive it.

¶54. I find this view of service of process repugnant to the principles of justice and fairness, and inconsistent with due process of law. For the reasons stated herein, I respectfully dissent.

**PIERCE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶55. The plurality's opinion in this case is shocking. Although Flagstar's general counsel committed a monumental error that in baseball terms can be compared to Bill Buckner's

26

1986 game-six World Series error, I cannot justify upholding a $500,000 default judgment when there is absolutely no basis in the law for doing so.

¶56. I fully concur with the plurality that Flagstar was properly served under the specific facts of this case. But I cannot concur with the plurality's analysis and disposition regarding Issue II. Because this Court consistently has found the "colorable-defense" prong of the three-part *Rogillio* test to be the most important,[15] I believe the default judgment against Flagstar should be set aside. Accordingly, I dissent in part.

I.

¶57. I do not think the plurality or the trial courts struck the *Rogillio* equilibrium correctly, because each gave insufficient consideration to the weightiest element, Flagstar's "colorable defenses." When the *Rogillio* balance is properly struck, the evidence before the trial court and this Court shows that the default judgment entered against Flagstar should have been set aside. Again, because the "colorable-defense" prong is the most important element of the *Rogillio* test, Flagstar's defenses likely would have required the trial court to set aside the default judgment. But nowhere in the trial court's order denying Flagstar's motion to set aside the default judgment are these defenses mentioned. And since the trial court failed to

---

[15] *See American States Ins. Co. v. Rogillio*, 10 So. 3d 463, 470 (Miss. 2009); *Greater Canton Ford Mercury, Inc. v. Lane*, 997 So. 2d 198, 204 (Miss. 2008); *Capitol One Services, Inc. v. Rawls*, 904 So. 2d 1010, 1016 (Miss. 2004); *Stanford v. Parker*, 822 So. 2d 886, 889 (Miss. 2002); *Allstate Ins. Co. v. Green*, 794 So. 2d 170, 174 (Miss. 2001); *Bailey v. Ga. Cotton Goods*, 543 So. 2d 180, 182 (Miss. 1989).

27

have an on-the-record hearing, we are left without a transcript of the hearing on the motion to set aside. Thus, we cannot assume that the trial court considered these defenses at all.

¶58.    Nevertheless, the plurality goes forward, as it should, with its own application of the three-prong standard. I agree with the plurality's analysis regarding the "good-cause" prong of the balancing test. But I believe the plurality's opinion incorrectly shifts the appropriate weight afforded by this Court away from the "colorable-defense" prong and thus takes the Court in a different direction. The facts of this case do not warrant such a shift in the law.

### *Flagstar's Colorable Defenses*

¶59.    The plurality's opinion mentions additional colorable defenses presented by Flagstar that were not considered by the trial court and that establish a strong defense to the Danoses' claims. First, the plurality notes that Flagstar could not be held liable, as a matter of law, for the injuries complained of by the Danoses. The plurality recognizes that:

> To be liable for the acts of a disclosed principal, the agent must have acted outside the scope of his agency and would incur no individual liability absent fraud or other equivalent conduct. *Rosson v. McFarland*, 962 So. 2d 1279, 1288 (Miss. 2007). *See also **Harrison v. Chandler-Sampson, Co., Inc.***, 891 So. 2d 224, 227-31 (Miss. 2005). However, the trial court granted summary judgment to Shirley, finding that no genuine issues of material fact existed as to his liability.[16] Thus, Flagstar's agent, who provided the sole basis for its alleged vicarious liability, was dismissed from the case. Since there is a valid argument that no agency relationship existed between Flagstar and the other defendants in the case that would have served as the basis for vicarious liability otherwise, this certainly could be deemed to be a "colorable defense" to the Danoses' claims against Flagstar.

---

[16]    The order granting summary judgment to Shirley was included as an exhibit in Flagstar's motion to set aside the default judgment.

28

Plur. Op. at ¶ 34.

¶60. Yet despite finding that Flagstar could not have been held liable to the Danoses, the plurality goes on to state "this [colorable-defense] prong would *appear* to weigh in favor of Flagstar." Plur. Op. at ¶34 (emphasis added). The plurality's conclusion on this issue does not afford the "colorable-defense" prong its appropriate weight. I believe it to be clear that, because Shirley was granted summary judgment, Flagstar could not have been held vicariously liable to the Danoses and that such a finding weighs heavily in favor of Flagstar.

¶61. Additionally, Flagstar argued in its motion to set aside the default judgment that it did not hold the mortgage on the home when the allegedly fraudulent acts leading to the lawsuit occurred. As the plurality notes, if this fact is true, then Flagstar cannot be liable to the Danoses under the note. Beyond question, this would be a "colorable defense" to the Danoses' claim, and should have been considered by the trial court as well.

¶62. Thus, this prong of the three-part test *substantially* outweighs the other two.

*Prejudice to the Danoses*

¶63. It is well-established that the "colorable-defense" prong "is a factor which often should be sufficient to justify vacation of a judgment entered by default." *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987).[17] But the plurality's opinion seems to turn on whether the Danoses would suffer prejudice if the default were set aside. In weighing "prejudice," the plurality notes that "[a]lthough the trial court did not specifically discuss the

---

[17] See also *Bryant, Inc. v. Walters*, 493 So. 2d 933, 937 (Miss. 1986); *Int'l Paper Co. v. Basila*, 460 So. 2d 1202, 1204 (Miss. 1984).

29

'prejudice' prong in its order, the Danoses did present facts in their response to Flagstar's motion to set aside indicating that they would suffer prejudice if the default judgment were set aside." Plur. Op. at ¶ 36. The Danoses further argued that they agreed not to oppose or appeal Shirley's and Amerigo's summary judgment motions, only in exchange for Shirley's and Amerigo's testimony at trial that Shirley had acted as an agent for Flagstar. The plurality finds these arguments outweigh the "most important" factor of the three-part standard, the "colorable-defense" prong. I cannot join such a finding.

¶64.   The arguments asserted by the Danoses are spurious, and clearly lack enough merit to outweigh Flagstar's colorable defenses. Rather, the Danoses should bear the consequences for allowing Shirley and Amerigo out of the case, because they should have known that letting Shirley out of the case would simultaneously let Flagstar out as well.

¶65.   Because Flagstar had no liability to the Danoses under the law and presented such to the trial court, I would find that the trial court abused its discretion in not setting aside the default judgment. Accordingly, I would reverse and render as to Issue II.

II.

¶66.   Alternatively, and in light of the plurality's decision to uphold the default judgment, I would note that the trial court's judgment and damage award of $500,000 is not supported by the evidence and amounts to plain error. And because the damage award in this case is so grossly disproportionate as to be contrary to common logic, it should be overturned. *See Greater Canton Ford Mercury, Inc. v. Lane*, 997 So. 2d 198, 206 (Miss. 2008), *reh'g denied* Jan. 8, 2009. ("This Court has stated that 'damage awards are only overturned when

30

the trial judge has abused his discretion or in exceptional cases where such awards are so gross as to be contrary to right reason.'")

¶67. This Court has held that "damages awards *must* be supported by evidence, and such evidence *must* be reflected in the record if it is to be affirmed on appeal." ***Rich by and through Brown v. Nevels***, 578 So. 2d 609, 617 (Miss. 1991). Further, the record on appeal should reflect how the trial court calculated damages. ***Lane***, 997 So. 2d at 206.

¶68. The record before this Court reveals that neither the complaint nor the exhibits submitted at the September 29, 2006, hearing provided a factual basis for the amount awarded by the trial court.[18] The trial court clearly abused its discretion by holding Flagstar and Michael Burks responsible, jointly and severally, for a $500,000 judgment when no such amount had been substantiated by the evidence, nor were the damages properly apportioned among the defendants. Before, we have not hesitated to vacate a judgment where the record is devoid of a factual basis for the amount of damages. *See **Lane***, 997 So. 2d at 206; ***Nevels***, 578 So. 2d at 617.

¶69. Although I would set aside the default judgment as mentioned above, I would note that the plurality, in upholding the default judgment, in essence has blindly permitted an

---

[18] The Complaint submitted by the Danoses requested "the Court enter judgement [sic] for the plaintiffs and against the defendants for actual and punitive damages in an amount to be determined by a jury at the trial of this cause and for any and such other and further relief as the Court deems appropriate." The evidence submitted at the hearing on damages consisted of: prescription drug receipts, a deed of trust, the real estate contract, the seller's disclosure statement, pictures of the damage, medical bills, testimony from the Danoses and two credit reports. Virtually none of the evidence presented at the damages hearing was connected to Flagstar.

31

award which is virtually devoid of substantiation. *See Nevels*, 578 So. 2d at 617. Further, the trial court found Flagstar and Michael Burks *jointly and severally* liable to the Danoses, yet failed to assign a percentage of fault to either defendant. The statute applicable at the time of the suit required that the trial court apportion fault between the two defendants. *See* Miss. Code Ann. 85-5-7 (Rev. 1999).[19] Since the trial court failed properly to apportion fault between Flagstar and Michael Burks, the plurality should, at least, remand for a proper determination on the issue of damages.

**WALLER, C.J., JOINS THIS OPINION.**

---

[19] The pertinent language of Mississippi Code Section 85-5-7 read as follows:

Except as may be otherwise provided in subsections (6) and (8) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be joint and several only to the extent necessary for the person suffering injury, death or loss to recover fifty percent (50%) of his recoverable damages.

Miss. Code Ann. § 85-5-7 (2) (Rev. 1999).